NATIONAL INDEPENDENT COAL OPERATORS ASSOCIATION et al.

v.

Rogers C. B. MORTON, Secretary of the Interior et al.

Civ. A. No. 397-72.

United States District Court, District of Columbia.

March 9, 1973.

John L. Kilcullen, Gall, Lane, Powell & Kilcullen, Washington, D. C., for plaintiffs.

Harold H. Titus, Jr., U. S. Atty., Arnold T. Aikens, Robert M. Werdig, Jr., Asst. U. S. Attys., Washington, D. C., for defendants.

### MEMORANDUM AND ORDER

AUBREY E. ROBINSON, Jr., District Judge.

This action involves a challenge to the procedures adopted by the Bureau of Mines, United States Department of the Interior, in assessing civil penalties for violation of health and safety standards under the Federal Coal Mine Health and Safety Act of 1969, Public Law 91–173, 30 U.S.C. § 801 et seq. Specifically, Plaintiffs claim that the Secretary and his subordinates have violated, and continue to violate, the requirements of Section 109(a)(1) and (3) of the Act, 30 U.S.C. § 819(a)(1) and (3). Subsection 109(a)(1) requires that in determining the amount of civil penalties to be assessed under the act the Secretary "shall consider" six factors: 1) the operator's history of previous violations; 2) the appropriateness of the penalty to the size of the operator's business; 3) whether the operator was negligent; 4) the effect of the penalty on the operator's ability to continue in business; 5) the gravity of the violation, and 6) the demonstrated good faith of the operator charged in attempting to achieve rapid compliance after notification of a violation. Subsection 109(a)(3) requires that a civil penalty shall be assessed by the Secretary

> only after the person charged with a violation under this chapter has been given an opportunity for a public hearing and the Secretary has determined, by decision incorporating his findings of fact therein, that a violation did occur, and the amount of the penalty which is warranted. . .

This is a question of first impression as to the construction and application of these provisions. The matter is now before the Court on Defendant's Motion to Dismiss or, in the alternative, for summary judgment, and on Plaintiff's cross-motion for Summary Judgment.

At present, when a Federal Mine Inspector finds a violation of the health or safety standards of the act, a "notice of violation" is issued to the Bureau of Mines in Washington. Based solely upon that notice of violation an assessment officer prepares and issues a "Proposed Order of Assessment" which lists the penalty to be assessed and recites verbatim that the six statutory factors have been considered. Upon receipt of the Proposed Order of Assessment, which lists only the violation and the amount of the penalty assessed, the operator may file a protest against either the finding of a violation or the appropriateness of the penalty, or both. Upon

protest the Assessment Officer may reconsider his initial proposed assessment in light of information and data submitted by the operator and may vacate, amend, or affirm the initial Proposed Order. Vacating the order, of course, ends the matter. If the order is either amended or affirmed the operator may then demand a public hearing, to be conducted under the Administrative Procedure Act, 5 U.S.C. § 554. If the operator does nothing in response to the Proposed Order of Assessment, after fifteen (15) working days, "he shall be deemed to have waived his right of protest, including his right of formal adjudication and opportunity for hearing, and the Proposed Assessment Order shall become the final assessment order of the Secretary of the Interior." 30 C.F.R. § 100.4(e). Part 100 of Title 30 of the Code of Federal Regulations contain the only written guidelines governing the penalty assessment process. 30 C.F.R. § 100.4(c) requires that in determining the amount of penalty to be initially proposed the assessment officer will consider all relevant circumstances including the six factors required by statute to be considered. Appendix A to Part 100 contains a penalty schedule listing suggested penalty ranges for various types of violations, albeit with a proviso that particular circumstances of a case might warrant variation from the listed schedule. There are no written guidelines within the assessment officer to guide the assessment officers in evaluation or application of the six statutory criteria for penalty assessment. When no protest is offered to a Proposed Order a form entitled "finding of fact" is inserted in the appropriate case file in the assessment office. That form recites that the assessment officer has found as fact that the cited violation did occur. From the effective date of the Act, March 30, 1970, through June 30, 1972, over 96,000 orders of assessment were issued by the Assessment Office of the Bureau of Mines.

Defendants here contend that the process by which the initial Proposed Order of Assessment is issued is "basically informal and preliminary in nature and provide(s) the coal mine operator with the opportunity to resolve the question of a civil penalty without more formal and time-consuming adjudicatory hearing procedures." (Defendants Br. at 4). The Court has difficulty with this characterization, however, for if the mine operator does nothing the Proposed Order ripens into a final order, enforceable in accord with the provisions of the statute. Under the statute, all final orders must have been prepared and issued in accord with the requirements of subsections 109(a)(1) and (3), i. e. the six statutory factors must have been considered in determination of the penalty to be assessed, the operator charged with the violation must have been given an opportunity for a public hearing, and the Secretary must have determined, by decision incorporating his findings of fact therein, that a violation did occur, and the amount of the penalty which is warranted. Bureau regulations, 30 C.F.R. § 100.4(c), recognize that the six statutorily prescribed factors must be considered even in "determining the amount of the *proposed* penalty." The Bureau contends that these factors are in fact considered in the initial assessment process, despite the absence of any written guidelines within the Bureau for evaluation and application of the factors and despite the absence of any record of their evaluation and application to a given case in the individual case file. In short, without any guidelines or restrictions, and without making any record, the assessment officer "considers" the factors subjectively, in a virtual vacuum. Approximately 100,000 such assessments were thus "considered" over two years. These are strong indications that the proposed order of assessment is anything but a considered determination. Since a factual issue might be raised on this point, however, it is unnecessary to pursue the

point further in determining the present motions.[1]

■ It is undisputed that the operator charged with a violation is given an opportunity for a hearing. Defendants would have the court read the statutory language as also requiring only an "opportunity" for a determination by the Secretary, by decision incorporating his findings of fact therein, that a violation did occur and the amount of the penalty which is warranted. In the Court's view, however, the statute absolutely requires such a determination by the Secretary in all cases, not merely the "opportunity" for a determination. By the most basic rules of statutory construction the word "opportunity" in Section 109(a)(3) relates only to the public hearing while the remainder of the Section requires that an assessment shall be made "only after . . . the Secretary has determined, by decision . . ." In short, in each case, whether the operator has exercised his opportunity for hearing or not, the Secretary must make findings of fact as to the occurrence of a violation and the amount of the penalty which is warranted. The only purpose for such a statutory provision is to ensure a considered determination by the Secretary in every case both as to the occurrence of a violation and as to the appropriate penalty. To allow the simple forms now employed for this purpose to suffice would be to make a mockery of the express statutory language requiring a "decision, incorporating his findings of fact therein, that a violation did occur, and the amount of the penalty which is warranted. . ." The present forms contain no findings as to the penalty other than the amount to be imposed.

The system thus required by Congress may be an administrative burden on the Bureau of Mines because of the volume of cases, the necessity for individual consideration of each case, and staff limitations. Nevertheless it is not for this Court to rewrite the statute to suit the convenience of its administrators. For whatever reasons, Congress wrote into this statute the procedural requirements here in issue. It is clear to this Court that they have not been complied with. As Plaintiffs contend, assessment orders seem to issue forth on a mass production basis from a clerical machinery completely divorced from any genuine process of considered determination as to each case.

■ This process of consideration and determination is a burden which Congress has placed on the administrators of the Act, to be fulfilled in every case. Section 109(a)(3) does not allow for defaults against the operator. It does the Bureau of Mines little use, therefore, to contend that the "opportunity" for such considered determinations will suffice. This would shift the initial burden to the mine operator charged with a violation. Congress chose not to adopt such an approach when it was expressly proposed in the "administration bills" of the proposed legislation. (S.1300 and H.R. 7976; 91st Congress). It is the Secretary's responsibility to see that the statutory requirements are fulfilled in all cases, even where the operator does nothing. In all cases before an assessment order can become final, the Secretary must (1) meaningfully consider the six statutory criteria for penalty assessment, (2) make express determinations thereon with regard to the amount of the penalty which is warranted, and (3) make express determinations that a violation did occur. Express determinations are to be made

---

1. As to the substantial inadequacies in the penalty assessment program, even from a purely administrative viewpoint, see Report to the Conservation and Natural Resources Subcommittee on Government Operations, House of Representatives; Improvements Needed in the Assessment and Collection of Penalties—Federal Coal Mine Health and Safety Act of 1969 (B–170686), General Accounting Office, July 5, 1972.

"by decision incorporating his findings of fact therein".[2]

This is not to say that the Secretary may not employ informal, preliminary procedures if he deems that advisable. It is to say that if those procedures do not resolve the matter, official action toward entry of a final assessment order by the Secretary can be taken only in compliance with the requirements outlined herein. Nor is it to say that the operator can fully turn a "deaf ear" to the proceedings and expect that the Bureau of Mines will be required by the Court to develop a record on both sides as fully as if the operator had participated by counsel throughout. The Bureau is entitled to act on the information before it, once the operator has been apprised of that information and given the opportunity to dispute or supplement it. At that point findings can properly be made on a considered evaluation of available information. This is a far cry from present procedures, where the operator receives only the form notice of violation and form notice of the amount of penalty proposed, with failure to object resulting in an automatic and unconsidered final order against him. Under present procedures there is every possibility that an unconsidered determination as to violation and/or penalty will be entered as a "finding" and become a final order if the operator does nothing. Under the present procedures the operator had no notice of what facts under the statutory criteria entered into determination of a violation or a proposed penalty, and thus no basis on which to know whether he should or should not object, either as to the violation or the penalty. The initial burden at present is upon the operator to show why a possible arbitrary finding of violation or penalty is not appropriate, rather than being upon the Secretary to make a considered determination of violation and appropriate penalty. When the Secretary initially makes a considered determination and informs the operator of his bases, both the Secretary and the operator have a starting point from which to go forward in implementing the Coal Mine Health and Safety Act.

The Secretary, the mine operators, the miners and the public all have important interests in the effective enforcement of the Federal Coal Mine Health and Safety Act. The Congress produced an important statute, containing many varied technical and procedural provisions, some of which are undoubtedly the products of legislative compromise. Nevertheless, all of those provisions are controlling upon the Bureau of Mines, the mine operators and the Courts. Today's decision need not hamper enforcement. Indeed if fully implemented by the Secretary it can improve and make more ef-

---

2. An adequate administrative procedure under the act, as this Court conceives it, would be:
   1.) Notice to operator of violation, spelling out the specifics of the violation alleged by the mine inspector.
   2.) Notice of proposed penalty assessment, spelling out the six statutory criteria *as applied to this violation*, e. g. upon finding that this is a major operation (xxxx tons per day or year) ; that the violation is the most serious (imminent danger withdrawal order—improper roof support) ; that the violation appears willful (or grossly negligent, negligent, etc.) and that this is the 10th such violation by this operator and that the operator has (not) made any effort to correct the violation.
   3.) Opportunity to object to the proposed findings as to the violation and/or as to the appropriate penalty.
   4.) Opportunity for formal adjudication and formal adjudication, if requested.
   5.) Determination by the Secretary, by decision incorporating his findings of fact therein, that a violation did occur, and the amount of the penalty which is warranted.
   This is intended as an illustrative example only. There may be other approaches which comport with the statutory requirements. This approach ensures consideration of the facts, both as to the violation and the penalty, by the Bureau by requiring that the rationale for decision be set forth.

fective enforcement efforts which have in the past proceeded, sometimes arbitrarily, under a difficult administrative mechanism.

Upon the above considerations, and upon consideration of the entire record herein, it is this 9th day of March, 1973,

Ordered that Defendants' Motion to Dismiss or, in the alternative, for Summary Judgment be and hereby is denied, and it is

Further ordered that Plaintiffs' Motion for Summary Judgment be and hereby is granted.