**NATIONAL INDEPENDENT COAL OPERATOR'S ASSOCIATION et al.**

**v.**

**Rogers C. B. MORTON (Secretary of the Interior of the United States) et al., Appellants.**

**No. 73-1678.**

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 29, 1973.

Decided Feb. 11, 1974.

Rehearing Denied April 24, 1974.

Michael Kimmel, Atty., Dept. of Justice, with whom Irving Jaffe, Acting Asst. Atty. Gen., Harold H. Titus, Jr., U. S. Atty., Kathryn H. Baldwin, Atty., Dept. of Justice, and J. Philip Smith, Asst. Sol., Dept. of the Interior, were on the brief for appellants. Arnold T. Aikens and Robert M. Werdig, Jr., Asst. U. S. Attys., also entered an appearance for appellants.

John L. Kilcullen, Washington, D. C., for appellees.

Before BAZELON, Chief Judge, and McGOWAN and MacKINNON, Circuit Judges.

MacKINNON, Circuit Judge:

Under the Federal Coal Mine Health and Safety Act of 1969 [1] the Secretary of the Interior is charged with enforcing mandatory health and safety standards in the nation's coal mines. Pursuant to this authority the Secretary may assess civil penalties against operators of coal mines in which health and safety violations occur.[2] The present action challenges the procedures adopted by the Secretary to assess these penalties.

Plaintiffs, an association of coal mine operators and various individual coal mine operators, seek an injunction and declaratory relief on the ground that the civil penalty assessment procedures embodied in 30 C.F.R. Pt. 100 violate the procedural requirements of Section 109(a)(3) of the Act, 30 U.S.C. § 819(a)(3) (1970). The district court granted summary judgment for the plaintiffs and permanently enjoined the Secretary from utilizing or enforcing the challenged procedures.[3] Because we find the Secretary's procedures to be legal under the Act as we interpret it, we reverse.

---

1. 30 U.S.C. § 801 et seq. (1970) (Pub.L. 91–173, Dec. 30, 1969, 83 Stat. 742) [hereinafter referred to as the Act].

2. 30 U.S.C. § 819 (1970).

3. National Independent Coal Operators Ass'n v. Morton, 357 F.Supp. 509 (D.D.C.1973).

## I

When a coal mine inspector discovers a health or safety violation he delivers a notice of violation to the mine operator.[4] This notice contains "a detailed description of the conditions or practices which cause and constitute an imminent danger or a violation of any mandatory health or safety standard . . . ."[5] For example, a notice of violation submitted to this court by the parties describes the violation as follows:

> [At 12:40 P.M. on December 21, 1971, an] accumulation of float coal dust was present in the No. 3 return entry 3 south off 1 Main West for a distance of about 1,500 feet.[6]

Over 227,000 notices of violation were issued from the effective date of the Act, March 30, 1970, through June 30, 1973.[7]

The Act requires that for each violation of a mandatory health or safety standard the mine operator "shall be assessed a civil penalty by the Secretary . . . ."[8] In view of the immense number of violations, the Secretary promulgated rules and regulations establishing preliminary procedures to be followed in assessing civil penalties.[9] It is these preliminary procedures which are challenged in the present action.

The regulations provide that after a notice of violation is issued it is reviewed by an Assessment Officer who determines "the liability of the operator . . . for a civil penalty and the amount of penalty to be proposed."[10] The Act prescribes six factors which the Secretary must consider in determining the amount of the penalty,[11] and the Secretary's regulations specifically require the assessment officer to consider all relevant circumstances, including the six factors specified in the Act.[12]

After reviewing the notice of violation and determining an appropriate amount for a civil penalty, the assessment offi-

---

4. 30 U.S.C. § 814 (1970). The notice of violation requires the mine operator to correct the violation within a specified period. *Id.* § 814(b). In addition to issuing a notice of violation, if the inspector finds that an imminent danger exists, he may direct that all personnel be withdrawn from the area until the danger is abated. *Id.* § 814(a).

5. *Id.* § 814(e).

6. Jt. App. at 85.

7. Brief for Appellant at 18 & n. 22. There were in excess of 100,000 notices of violations per year.

8. 30 U.S.C. § 819(a)(1) (1970). The net amount assessed under the Part 100 procedures from January 16, 1971 to March 9, 1973 exceeded $24,500,000. Brief for Appellant at 18 n. 23.

9. 30 C.F.R. Pt. 100 (1973). These procedures were adopted in January 1971, 36 Fed.Reg. 779–80, and were amended in certain respects in June 1972, 37 Fed.Reg. 11459–60, 11861–62. Since the entry of the district court's order enjoining the preliminary procedures, such procedures have been suspended, 38 Fed.Reg. 10085 (April 24, 1973), and all penalty assessment cases are being processed under the formal hearing procedures of 43 C.F.R. §§ 4.540 et seq., as revised, 38 Fed.Reg. 10086–87 (April 24, 1973).

10. 30 C.F.R. § 100.3(a) (1973).

11. In determining the amount of the penalty, the Secretary shall consider the operator's history of previous violations, the appropriateness of such penalty to the size of the business of the operator charged, whether the operator was negligent, the effect on the operator's ability to continue in business, the gravity of the violation, and the demonstrated good faith of the operator charged in attempting to achieve rapid compliance after notification of a violation.

30 U.S.C. § 819(a)(1) (1970).

12. 30 C.F.R. § 100.3(c) (1973). *See also id.* § 100.2(a).

Subsequent to the district court's injunction, the Secretary amended the assessment procedures to utilize an "assessment formula." 38 Fed.Reg. 10086 (April 24, 1973). This formula calculates the appropriate penalty in a particular case by assigning numerical values to each of the six statutory factors. *See* Brief for Appellant at 13–17. Although the Secretary has represented to this court that the assessment formula will be retained even if the district court's judgment is reversed, we need not consider the assessment formula in deciding the present case. *Id.* at 12, 13.

cer serves a Proposed Order of Assessment upon the mine operator. This proposed assessment order refers to the particular violation, specifies the amount of the proposed penalty,[13] and advises the mine operator that he has 20 days from receipt of the order either to protest the proposed penalty or to petition for hearing and formal adjudication.[14] If the operator fails timely to protest or request a formal hearing, "he shall be deemed to have waived his right of protest and his right of formal adjudication with opportunity for hearing, and the Proposed Assessment Order shall become the final assessment order of the Secretary of the Interior." [15]

In the event that the operator protests the proposed order, the assessment officer may reconsider in light of the operator's arguments and redetermine, amend or reissue the proposed order.[16] Upon amendment or reissuance of the proposed order, the operator again has 20 days to accept or reject it in whole or in part, and to request a hearing and formal adjudication.[17] If the operator does not file a timely request for a hearing and formal adjudication, the amended or reissued proposed assessment order becomes the final assessment order of the Secretary.[18]

In the event that the operator does request a hearing,[19] the hearing is de

novo [20] and the Secretary has the burden of proving by a preponderance of the evidence that the violation occurred and that the penalty is warranted.[21] The hearing examiner must render a decision based solely on the record of the hearing,[22] incorporating findings of facts and conclusions of law.[23] Thus, throughout the preliminary procedures for, assessing civil penalties, formal adjudication is available to a mine operator who either contests the occurrence of the violation or protests the amount of the proposed penalty.

## II

Plaintiffs contend that these preliminary procedures violate the procedural requirements of Section 109(a)(3) of the Act which provides as follows:

A civil penalty shall be assessed by the Secretary only after the person charged with a violation under this chapter has been given an opportunity for a public hearing and the Secretary has determined, by decision incorporating his findings of fact therein, that a violation did occur, and the amount of the penalty which is warranted, and incorporating, when appropriate, an order therein requiring that the penalty be paid. Where appropriate, the Secretary shall consolidate such hearings with other pro-

---

13. 30 C.F.R. § 100.3(b)(2) (1973).

14. *Id.* § 100.3(d). The operator may protest the order either partly or in its entirety.

15. *Id.* § 100.3(e). The assessment officer may extend the time allowed for protest. *Id.* § 100.3(g)(1).

16. *Id.* § 100.3(g)(2), (3).

17. *Id.* § 100.3(h).

18. *Id.*

19. The petition for hearing and formal adjudication must be in writing and must include a list of the violations in issue. 43 C.F.R. § 4.541(a) (1972). Alternatively, the operator may attach to his petition a copy of the final proposed assessment order which clearly indicates the violations at issue. *Id.* § 4.-541(b). Within 30 days of filing his petition, the operator must file a short and

plain statement of the factual and legal issues, as well as a brief statement concerning the applicability of the six statutory criteria of 30 U.S.C. § 819(a)(1). *Id.* § 4.544(a).

20. 30 C.F.R. § 100.5(b) (1973).

21. 43 C.F.R. § 4.587 (1972).

22. *Id.* § 4.24.

23. *Id.* § 4.593. The hearing examiner's decision is reviewable by the Board of Mine Operations Appeals. 43 C.F.R. §§ 4.1(4), 4.-500(a)(2), 4.600 (1972).
If the formal adjudication is adverse to the operator he may obtain de novo judicial review of the penalty by not paying it and awaiting the Secretary's enforcement action in the district court. 30 U.S.C. § 819(a)(4) (1970). The same judicial review is available where the operator fails to request a hearing and allows the proposed assessment order to become final.

ceedings under section 815 of this title. Any hearing under this section shall be of record and shall be subject to section 554 of Title 5.

30 U.S.C. § 819(a)(3) (1970). Plaintiffs argue that this section requires a formal decision incorporating findings of fact in every case regardless of whether a mine operator waives his right to a formal hearing by failing to file an objection to the proposed assessment order. If plaintiffs' interpretation of the Act is correct, then the Secretary's preliminary procedures for assessing civil penalties are illegal because, absent a request for formal adjudication, the final assessment order issues without a decision which complies with the formal requirements of the Administrative Procedure Act.[24]

Section 109(a)(3) is logically capable of two different constructions. Plaintiffs would read the statute, even where no hearing is requested by the operator, as follows: "A civil penalty shall be assessed by the Secretary only after . . . the Secretary has determined, by decision incorporating his findings of fact therein, that a violation did occur, and the amount of the penalty which is warranted . . . ."

The Secretary maintains that the requirement for a decision must be read in context and that the section as a whole describes the formal adjudicative process which is available to a mine operator upon his request. The Act clearly requires a formal decision whenever disputed issues are contested in a hearing. However, according to the Secretary's interpretation, the requirement for a formal decision of the character and extent for which appellant argues, is linked to the statutory guarantee of an opportunity for a hearing. Under this interpretation a formal decision is not required unless the mine operator takes advantage of that opportunity by requesting a hearing.

In deciding which is the proper interpretation it is helpful to identify the nature of the decision contemplated by the Act. The Act requires more than an "act of deciding."[25] The decision described in Section 109(a)(3) parallels the decision required by the Administrative Procedure Act (hereinafter APA) after a formal hearing has been conducted. The APA specifies that a decision following a hearing must include "(A) findings and conclusions, and the reasons or basis therefor, on all the material issues of fact, law, or discretion presented on the record; and (B) the appropriate rule, order, sanction, relief, or denial thereof."[26] A decision under Section 109(a)(3) must include (1) findings on the material issues of the occurrence of a violation and the amount of the penalty, and (2) an order requiring that the penalty be paid.[27] This similarity to a formal APA decision suggests that when a decision is required under Section 109(a)(3), it must contain "specific and detailed findings and conclusions of the kind customarily associated with formal proceedings." [28]

Plaintiffs would interpret the Act to require this kind of formal decision even though the mine operator wilfully chooses not to request a hearing on the proposed penalty. However, once given notice of his right to object, the operator's failure to request a hearing suggests that he does not dispute the fact of violation nor disagree with the appropriateness of the specific penalty proposed. As the district court pointed out, in the absence of a request for a hearing the Secretary may act on the information available to him and need not adduce evidence for the other side.[29] Where no issue is disputed by the operator, we do not believe that Section

24. 5 U.S.C. §§ 554, 557 (1970); *see* notes 25–28 *infra* and accompanying text.

25. Webster's New International Dictionary 860 (2d ed. unabr. 1961).

26. 5 U.S.C. § 557(c) (1970).

27. 30 U.S.C. § 819(a)(3) (1970).

28. Automotive Parts & Accessories Ass'n v. Boyd, 132 U.S.App.D.C. 200, 207, 407 F.2d 330, 337 (1968).

29. 357 F.Supp. at 513.

109(a)(3) requires the Secretary to prepare a formal decision which merely would consist of the same information already contained in the proposed assessment order.

■ ■ In situations where a statute prescribes a hearing prior to agency action the courts have held that the agency need not conduct a hearing if no disputed issue exists.[30] "In such situations, the rationale is that Congress does not intend administrative agencies to perform meaningless tasks."[31] Similarly, as we interpret Section 109(a)(3), the Secretary need not prepare a formal decision where there is no dispute and the operator evidences his satisfaction with the proposed penalty by choosing not to request a hearing.

■ ■ If the operator wants to contest the alleged violation or if he believes that his particular circumstances warrant a lesser penalty, he need only request a hearing and briefly describe the issues in dispute. Such a request puts the Secretary to his burden in a hearing of proving both the violation and the appropriateness of the penalty. Following the hearing the Secretary has the statutory responsibility for preparing a "decision incorporating his findings of fact therein."[32]

### III

The legislative history of Section 109(a)(3) supports the foregoing interpretation of the statute with respect to the decision requirement. Both the Senate and House bills, in the form in which each bill passed its respective house, required a formal decision only after a hearing had been conducted. The House bill provided:

Upon written request made by an operator within thirty days after re-

---

30. FPC v. Texaco, 377 U.S. 33, 39–44, 84 S. Ct. 1105, 12 L.Ed.2d 112 (1964); Denver Union Stock Yard Co. v. Producers Livestock Marketing Ass'n, 356 U.S. 282, 287, 78 S.Ct. 738, 2 L.Ed.2d 771 (1958); United States v. Storer Broadcasting Co., 351 U.S. 192, 76 S.Ct. 763, 100 L.Ed. 1081 (1956); United States v. Consolidated Mines & Smelting Co., 455 F.2d 432, 453 (9th Cir. 1971); Dyestuffs & Chemicals, Inc. v. Flemming, 271 F.2d 281, 286–287 (8th Cir. 1959), cert. denied, 362 U.S. 911, 80 S.Ct. 681, 4 L.Ed.2d 619 (1960); see Weinberger v. Hynson, Westcott & Dunning, 412 U.S. 609, 620–622, 93 S.Ct. 2469, 37 L.Ed.2d 207 (1973).

In United States v. Storer Broadcasting Co., supra, the FCC had denied a license application without a hearing because the application established on its face a violation of a substantive FCC rule. Even though the governing statute required a "full hearing" before denial of an application, the Supreme Court concluded that where an application clearly contravened substantive rules, a hearing was unnecessary unless the application

set forth reasons, sufficient if true, to justify a change or waiver of the Rules. We do not think Congress intended the Commission to waste time on applications that do not state a valid basis for a hearing. If any applicant is aggrieved by a refusal, the way for review is open.

*Id.* at 205, 76 S.Ct. at 772. Therefore, the statutorily prescribed "full hearing" was only required where the applicant demonstrated the existence of a disputed issue.

A similar situation exists in the present case. A notice of violation issued to a mine operator evidences a violation of the substantive health and safety standards established by Congress, and the proposed penalty assessment order is based upon the notice of violation. The operator is advised that he has the right to request formal adjudication and he is fully advised of the consequences of a failure to request such adjudication. If any mine operator objects to the notice of violation or to the proposed penalty and desires a formal decision, he need only request formal adjudication. As in the *Storer Broadcasting* decision, "the way for review is open." *Id.*

31. United States v. Consolidated Mines & Smelting Co., 455 F.2d 432, 453 (9th Cir. 1971).

32. We thus interpret the Act to permit any mine operator who desires a formal decision on the alleged violation or the amount of the proposed penalty to obtain such decision merely by indicating his objection and making a simple request for a hearing. By failing to request a hearing he waives his right to formal adjudication. This procedure is analogous to the procedure in civil litigation where a defendant who fails to answer a complaint may have a default judgment entered against him. Fed.R.Civ.P. 55.

ceipt of an order assessing a penalty under this section, the Secretary shall afford such operator an opportunity for a hearing and, *in accordance with the request*, determine by decision whether or not a violation did occur or whether the amount of the penalty is warranted or should be compromised.[33]

The Senate bill read as follows:

An order assessing a civil penalty under this subsection shall be issued by the Secretary only after the person against whom the order is issued has been given an opportunity for a hearing and the Secretary has determined by decision incorporating findings of fact *based on the record of such hearing* whether or not a violation did occur and the amount of the penalty, if any, which is warranted. Section 554 of title 5 of the United States Code shall apply to any such hearing and decision.[34]

The italicized language demonstrates that under both the Senate and the House bills the requirement for a formal decision was clearly tied to the operator's request for a hearing.

Following passage in both houses, the respective bills were referred to a Conference Committee on the disagreeing votes between the two houses. Although the Conference Committee "adopt[ed] the Senate provision," [35] the Committee deleted the language italicized above. Thus the italicized language did not appear in Section 109(a)(3) of the Conference bill which eventually was enacted. The only explanation for this section appears as follows in the Conference Report:

Both the Senate bill and the House amendment provided an *opportunity* for a hearing in assessing such penalties, but the Senate bill required a record hearing under 5 U.S.C. 554. The conference substitute adopts the Senate provision with the added provision that, where appropriate, such as in the case of an appeal from a withdrawal order, an effort should be made to consolidate the hearings. The commencement of such proceedings, however, shall not stay any notice or order involving a violation of a standard.[36]

We do not believe that the Conference Committee's deletion of the italicized language from the Senate bill reflected an intent to alter the procedural requirements of the bill. The Committee's concern was that the Act afford an *opportunity* for formal adjudication under 5 U.S.C. § 554 and the Conference Report emphasized that "[b]oth the Senate bill and the House amendment provided an *opportunity* for a hearing. . . ." [37] If, as plaintiffs suggest, the Committee intended to alter the bill's procedural requirements to require a formal decision where the operator did not avail himself of the opportunity for formal adjudication, one would expect the Committee to mention the change in the Conference Report. Their failure to do so, together with their statement that they adopted the Senate provision, indicates that the Committee deleted the italicized language because they considered it surplusage.

The district court expressed concern that the preliminary procedures adopted by the Secretary "would shift the initial burden to the mine operator charged with a violation," and that "Congress chose not to adopt such an approach when it was expressly proposed in the

---

33. H.R. 13950, 91st Cong., 1st Sess. § 109(b) (1969) (115 Cong.Rec. 32064) (emphasis added). Most of the Act's legislative history is reprinted in a one-volume committee print. House Comm. on Education and Labor, 91st Cong., 2d Sess., Legislative History, Federal Coal Mine Health and Safety Act (1970) [hereinafter cited as Legislative History]. H.R. 13950 § 109(b) appears in Legislative History at 932.

34. S. 2917, 91st Cong., 1st Sess. § 808(a)(3) (1969) (115 Cong.Rec. 28256, Legislative History at 546) (emphasis added).

35. H.R. Rep. No. 91–761, 91st Cong., 1st Sess. 71 (1969) (Legislative History at 1033).

36. *Id.* (emphasis added).

37. *Id.* (emphasis added).

'administration bills' of the proposed legislation." [38] We do not share the district court's concern. Requiring the operator to request a hearing and briefly describe the issues in dispute does not impose a significant burden upon the operator. At the hearing the burden remains with the Secretary to prove his case by a preponderance of the evidence.[39]

Furthermore, the legislative history does not reflect congressional disapproval of the procedures adopted by the Secretary. Although the administration bills did specify a procedure similar to that challenged here, the broad procedural requirements ultimately adopted are not inconsistent with the more detailed provisions of the administration bills.

The administration bills, as well as the bill approved by the House, specified that a mine operator must request a hearing in writing within 30 days after receipt of an assessment order.[40] The corresponding section of the Senate bill afforded the mine operator an opportunity for formal adjudication but did not detail the specific procedures for requesting a hearing.[41] The statement in the Conference Report, set forth above,[42] indicates that the Conference Committee considered the only significant difference between these sections of the bills to be the reference in the Senate bill to the Administrative Procedure Act, and that this slight difference was the reason it adopted the language of the Senate bill. In view of the explanation provided by the Report of the Conference Committee, we cannot conclude that Congress intended to disapprove the more specific procedure outlined in the administration bills.

38. 357 F.Supp. at 512.

39. 43 C.F.R. § 4.587 (1972).

40. The pertinent provision of the bill as approved by the House is set forth above. Note 33 *supra* and accompanying text. The corresponding provisions of the administration bills were virtually identical to the pro-

## IV

We conclude that the Act does not require the Secretary to prepare a formal decision unless the mine operator exercises his right to request formal adjudication. Upon receipt of a proposed assessment order, if a mine operator wants to contest either the fact of violation or the amount of the proposed penalty, he need only request a hearing and briefly describe the issues in dispute. Following such a request the Secretary must provide formal adjudication in compliance with 5 U.S.C. § 554, including a formal decision. The Act does not require a formal decision where no hearing is requested and no issues are in dispute.

Reversed.

vision in the bill approved by the House. *See* S. 1300, 91st Cong., 1st Sess. § 113(b) (1969) ; H.R. 7976, 91st Cong., 1st Sess., § 113(b) (1969).

41. Note 34 *supra* and accompanying text.

42. Note 36 *supra* and accompanying text.