KLEPPE, SECRETARY OF THE INTERIOR *v.*
DELTA MINING, INC., ET AL.

No. 74–521.  Argued October 6, 1975—Decided January 26, 1976

Burger, C. J., delivered the opinion of the Court, in which all Members joined except Stevens, J., who took no part in the consideration or decision of the case.

*Deputy Solicitor General Randolph* argued the cause for petitioner. With him on the brief were *Solicitor General Bork, Acting Assistant Attorney General Jaffe, Harriet S. Shapiro, Leonard Schaitman,* and *Michael Kimmel.*

*Fred Blackwell* argued the cause and filed a brief for respondents. *John L. Kilcullen* filed a reply brief for respondent Mears et al.*

Mr. Chief Justice Burger delivered the opinion of the Court.

We granted certiorari in this case and consolidated it for argument with No. 73–2066, *National Independent Coal Operators' Assn.* v. *Kleppe, ante,* p. 388, decided today, to resolve an apparent conflict between the two Circuits.

---

*\*Jospeh A. Yablonski, Daniel B. Edelman,* and *Paul R. Hoeber* filed a brief for the United Mine Workers of America as *amicus curiae* urging reversal.

*Guy Farmer* and *William A. Gershuny* filed a brief for the Bituminous Coal Operators' Assn., Inc., as *amicus curiae* urging affirmance.

In 1971 and January 1972 inspectors from the Bureau of Mines entered and inspected the coal mines owned respectively by Delta Mining, Inc., G. M. W. Coal Co., Inc., and a partnership of Edward Mears and others known as the M. Y. Coal Co. The inspectors detected a number of violations of the Federal Coal Mine Health and Safety Act of 1969, 83 Stat. 742, 30 U. S. C. § 801 *et seq.*, or regulations and served each mine operator with notices of the infractions.[1] Each notice stated that the violations were to be abated by a specified date. The inspectors returned on that date and furnished the mine operators with a notice that the violations had been abated. The local office of the Bureau of Mines sent copies of the notice of violation and abatement to the Bureau's central office. There an assessment officer reviewed the notices and sent proposed penalty assessment orders to the mine operators. The orders contained a list of the violations, the dates of their occurrence, the regulations violated, and the amounts of the proposed penalties.

The proposed order of assessment to Delta was issued on April 11, 1972. It referred to six violations with civil penalties for each ranging from $30 to $90 for a total of $375. In December 1971, and January and May 1972, G. M. W. was issued proposed assessment orders for violations occurring from May to December 1971. Ten of the violations were assessed civil penalties from $25 to $100, totaling $525. G. M. W. also received an imminent-danger withdrawal order on November 24, 1971,

---

[1] The operators protest that these notices are not part of the record below. Since the issue before this Court is the validity of the regulations, not whether the regulations were properly complied with, for purposes of. this case we will assume the notices were properly served. We note, however, that the mine operators do not contend that they were not given ample notice of the violations charged by the mine inspectors.

identified as a fire hazard from loose coal in excess of three feet deep and was assessed a fine of $5,000. For violations occurring in 1971 and 1972 Mears received assessments with fines for 16 violations ranging from $25 to $100 and a 17th at $200 for a total of $1,000. It also received a withdrawal order for failure to abate a violation of the respirable-dust-concentration standard with a fine of $1,000.

Each of the operators protested the proposed assessments. Delta argued, among other things, that it was a newly opened, small mine and the fines would affect its ability to stay in business. G. M. W. protested that the loose coal was wet and therefore not a fire hazard. Without explanation as to how, if at all, the information in the protest letters was considered, the assessment officer reissued the proposed orders. One of G. M. W.'s penalties was reduced from $100 to $50. The operators were again informed that they had 15 working days from the receipt of the reissued proposed order "to accept the amended or reissued order, whereupon it shall become the final assessment order of the Secretary, or to request formal adjudication with opportunity for hearing." None of the operators requested formal adjudication.

The mine operators did not pay the assessments. The Secretary filed complaints against each of them in October and November 1972, seeking enforcement of the assessments. Attached to the complaints were the proposed orders of assessment and preprinted forms reciting that the assessment officer found in fact that the violations had occurred. These forms were dated several months after the proposed assessment orders. The mine operators each answered, denying liability.

While the cases were awaiting trial, the United States District Court for the District of Columbia enjoined the Secretary from utilizing or enforcing the assessment pro-

cedures of 30 CFR pt. 100 (1972), concluding that § 109 (a)(3) of the Federal Coal Mine Health and Safety Act, 30 U. S. C. § 819 (a)(3), requires the Secretary to prepare a decision incorporating findings of fact in all penalty assessment determinations, whether or not a hearing is requested. *National Independent Coal Operators' Assn.* v. *Morton,* 357 F. Supp. 509 (1973).

On the basis of that decision G. M. W. moved for summary judgment, contending that the Secretary's assessment orders were unenforceable since there had been no "decision incorporating . . . findings of fact." The District Court for the Western District of Pennsylvania, relying on the *National Independent* decision, decided that the penalty assessments sought to be enforced by the Secretary did not meet the requirements of § 109 (a)(3) of the Act because they were not supported by adequate findings of fact. The court entered judgment in favor of the respondent mine operators in all three cases.

While the cases were pending on appeal, the Court of Appeals for the District of Columbia Circuit reversed the decisions on which the trial court here relied. *National Independent Coal Operators' Assn.* v. *Morton,* 161 U. S. App. D. C. 68, 494 F. 2d 987 (1974). The Court of Appeals for the Third Circuit, however, declined to follow the District of Columbia Circuit decision, and held that § 109 (a)(3) compels the Secretary to support each assessment order with express findings of fact concerning the violation and the amount of the penalty, without regard to whether or not the operator requests a hearing. 495 F. 2d 38 (1974). We have today affirmed *National Independent,* which holding governs this case. Two remaining issues raised by the Third Circuit holding require discussion.

The Court of Appeals first distinguished the District of Columbia Circuit holding on the ground that the "opera-

tors' failure to request a hearing in no way suggests that the appropriateness of the penalty amount went undisputed. In each instance, the operators lodged protests. . . ." 495 F. 2d, at 44. This overlooks the fact that while a protest does not necessarily trigger administrative review, a request for a hearing does. Here the party against whom a penalty is assessed has deliberately forgone the opportunity for a full, public, administrative hearing from which findings of fact can be made. Here, too, the amount of the penalty is subject to *de novo* review in the district court whether or not a hearing was held.

The Court of Appeals next distinguished the holding of the District of Columbia Circuit on the ground that the proposed assessment orders at issue "contained *no* 'information' other than *pro forma* recitations that the six criteria [of § 109 (a)(1) of the Act] had been considered." (Emphasis in original.) *Ibid.* The court was concerned that the proposed assessment orders were on "preprinted forms which recited, in some instances, that the six factors set out in the statute had been considered" and that the final orders of the Secretary did not mention the six criteria but "merely set forth the Secretary's finding that a violation 'did, in fact, occur.' " *Id.,* at 40.[2] The court then held that "each final decision of

_____

[2] The Third Circuit found support for its concern in a Comptroller General's report which stated that the Comptroller was " 'unable to determine the adequacy of the consideration given to the six factors [of § 109 (a)(1)] and the basis for the penalties assessed in [400] sample cases.' " 495 F. 2d, at 43. However, the Secretary's method of assessing penalties has been changed in a way that largely meets this objection. The regulations now in force contain formulas to be used by the assessment officers in considering the six § 109 (a) (1) criteria. 30 CFR § 100.3 (1975). The Secretary represented to the Court of Appeals for the District of Columbia Circuit that the assessment formula is to be retained. *National Coal Operators' Assn.* v. *Morton,* 161 U. S. App. D. C. 68, 70 n. 12, 494 F. 2d 987, 989

the Secretary must be accompanied by findings of fact, concerning both the fact of violation and the magnitude of the penalty." *Id.*, at 44.

The court noted the general proposition that judicial "review of a final administrative determination . . . is rendered practically impossible, or at least vastly more difficult, where the agency's decision is not accompanied by express findings." *Id.*, at 42. We agree with the general proposition when judicial review is based on a substantial-evidence test. Here, however, if an operator wishes to contest the amount of the penalty without a hearing, that can be done by refusing to pay the penalty, thus invoking the right to a *de novo* trial in the district court, with a jury if desired. When a violation is noticed the operator is informed as to the details of the nature and location of that violation; the administrative procedures of § 105 of the Act, 30 U. S. C. § 815, with provision for a public hearing on request, come into play and appellate review is available.

In light of our holding in *National Independent Coal Operators' Assn.* v. *Kleppe, ante,* p. 388, the judgment of

n. 12 (1974). These regulations were not in effect when the penalties at issue here were levied. Use of the current regulations is preferable to the apparent *ad hoc* consideration given the criteria in this case. But a trial *de novo* is available to the mine operators on the amount of the penalty, so the Secretary's failure to promulgate the best regulations in the first instance does not render all penalties assessed under the prior regulations unenforceable. Although explication by the assessment officer and an examiner might be of some aid to the district judge who is called upon to consider the penalty, the provision for a *de novo* trial on the amount of the penalty places squarely on the court the task of evaluating the penalty. The six criteria of § 109 (a) (1) can be argued to the district court. The Third Circuit is undoubtedly correct that the more information a mine operator has, the better the operator will be able to determine whether to challenge the penalty. The issue, however, was whether the new procedures were mandated by the statute.

410

the Court of Appeals for the Third Circuit is reversed, and the case is remanded for further proceedings consistent herewith.

*Reversed and remanded.*

MR. JUSTICE STEVENS took no part in the consideration or decision of this case.