NATIONAL INDEPENDENT COAL OPERATORS'
ASSOCIATION ET AL. *v.* KLEPPE, SECRETARY
OF THE INTERIOR, ET AL.

No. 73–2066.   Argued October 6, 1975—Decided January 26, 1976

Burger, C. J., delivered the opinion of the Court, in which all Members joined except Stevens, J., who took no part in the consideration or decision of the case.

*John L. Kilcullen* argued the cause and filed a brief for petitioners.

*Deputy Solicitor General Randolph* argued the cause for respondents. On the brief were *Solicitor General Bork, Acting Assistant Attorney General Jaffe, Harriet S. Shapiro, Leonard Schaitman,* and *Michael Kimmel.**

---

*\*Guy Farmer* and *William A. Gershuny* filed a brief for the Bituminous Coal Operators' Assn., Inc., as *amicus curiae* urging reversal.

MR. CHIEF JUSTICE BURGER delivered the opinion of the Court.

This case [1] presents the question whether the Federal Coal Mine Health and Safety Act of 1969, 83 Stat. 742, 30 U. S. C. § 801 *et seq.,* requires the Secretary of the Interior to prepare a decision with formal findings of fact before assessing a civil penalty against a mine operator absent a request by the mine operator for an administrative hearing, the penalty being enforceable only by way of a subsequent judicial proceeding in which the operator is entitled to a trial *de novo* as to the amount of the penalty.

The National Independent Coal Operators' Association sought declaratory and injunctive relief on the ground that certain civil penalty assessment regulations utilized by the Secretary violated the procedural requirements of the Act. The Court of Appeals for the District of Columbia Circuit held that the regulations did not violate the Act.[2] *National Independent Coal Operators' Assn.* v. *Morton,* 161 U. S. App. D. C. 68, 494 F. 2d 987 (1974).

We granted certiorari, 420 U. S. 906 (1975), to resolve the apparent conflict between the District of Columbia Circuit and the Third Circuit holding in *Morton* v. *Delta Mining, Inc.,* 495 F. 2d 38 (1974), reversed and remanded, *post,* p. 403.

---

[1] Consolidated with No. 74–521, *Kleppe* v. *Delta Mining, Inc., post,* p. 403.

[2] In the companion case, *supra,* three mine operators in a consolidated action raised the same challenge as a defense when the Secretary sought judicial enforcement of assessment orders in a suit, where, under the Act, the operators had a right to a trial *de novo* as to the amount of the penalties. The Court of Appeals for the Third Circuit noted the District of Columbia Circuit's holding but held that the regulations were invalid for failure to require findings of fact, rejecting the Secretary's contention that such findings are required only when an administrative hearing is requested by a mine operator.

(1)

The statutory provision in question, § 109 (a)(3), 30 U. S. C. § 819 (a)(3), is part of the enforcement scheme of the Federal Coal Mine Health and Safety Act of 1969. The Act prescribes health and safety standards for the protection of coal miners, Titles II and III, 30 U. S. C. § 841 *et seq.;* it requires coal mine operators and miners to comply with the standards. § 2 (g)(2), 30 U. S. C. § 801 (g)(2).

Section 103 of the Act, 30 U. S. C. § 813, requires the Secretary to conduct continuing surveillance of mines by inspectors. Among the purposes of the inspections are finding imminently dangerous conditions and violations of mandatory health or safety standards. Section 104, 30 U. S. C. § 814, provides procedures for abating the conditions found by the inspectors. If an imminent danger is found, the inspector is required to issue a withdrawal order compelling the mine operator to withdraw all persons from the danger area. If a violation of a mandatory standard is found that is not imminently dangerous, the inspector issues a notice to the operator fixing a reasonable time for its abatement. If the violation is not abated and the time for abatement is not extended, the inspector then issues a withdrawal order. Withdrawal orders are also issued for any "unwarrantable failure" of mine operators to comply with the standards. The notices and orders issued contain a detailed description of the dangerous conditions or violations and their locations. The notices must be in writing and given promptly to the mine operators.

Under § 105, 30 U. S. C. § 815, an operator may apply to the Secretary for review of the factual basis of any order or notice issued under § 104, or for review of the amount of time allowed for abatement of violations. Upon application from a mine operator the Secretary

makes whatever investigation he deems appropriate; an opportunity for a public hearing is provided. Hearings are subject to § 5 of the Administrative Procedure Act, 5 U. S. C. § 554, and following the hearing the Secretary must make findings of fact. Section 105 also requires that actions by the Secretary be taken promptly because of the urgent need for prompt decision. The orders issued by the Secretary under this section are subject to judicial review under § 106, 30 U. S. C. § 816, by a court of appeals.

As part of the enforcement scheme, the Act requires the Secretary to assess and collect civil penalties. Section 109 (a)(1), 30 U. S. C. § 819 (a)(1), subjects mine operators to civil penalties not exceeding $10,000 for each violation of a mandatory standard or other provision of the Act. In determining the amount of the penalty, § 109 (a)(1) requires the Secretary to consider

"the operator's history of previous violations, the appropriateness of such penalty to the size of the business of the operator charged, whether the operator was negligent, the effect on the operator's ability to continue in business, the gravity of the violation, and the demonstrated good faith of the operator charged in attempting to achieve rapid compliance after notification of a violation."

The provision in question, § 109 (a)(3), as noted above, authorizes the Secretary to assess a civil penalty only after the operator charged with a violation "has been given an opportunity for a public hearing and the Secretary has determined, by decision incorporating his findings of fact therein, that a violation did occur, and the amount of the penalty which is warranted . . . ." Hearings under this section are to be consolidated with other proceedings when appropriate. They must be of record

and subject to provisions of the Administrative Procedure Act, 5 U. S. C. § 554.

If the operator does not pay the penalty assessed, the Secretary is required, pursuant to § 109 (a) (4), 30 U. S. C. § 819 (a) (4), to petition for judicial enforcement of the assessment in the district court for the district in which the mine is located. At that stage the court must resolve the issues relevant to the amount of the penalty in a *de novo* proceeding with a jury trial if requested. The trial *de novo* with a jury is not available for review of issues of fact which "were or could have been litigated" in the court of appeals under § 106.[3]

### (2)

We are concerned in this case with the regulations the Secretary has adopted to govern only one part of this statutory scheme: the assessment of penalties under § 109 (a) (3). When the Secretary initially implemented the Act, he published regulations that provided for civil penalty assessments to be determined by a hearing examiner, with a right of appeal to a departmental appeals board. 30 CFR pt. 301 (1971), recodified, 43 CFR § 4.540 *et seq.* (1972). Nine months later, due to the large numbers of violations charged (approximately 80,000 or more per year), the Secretary adopted the regulations contested here. 30 CFR pt. 100 (1972).[4] These regulations pro-

---

[3] Respondents have suggested that trial *de novo* is available on the factual basis of the violation as well as on the amount of the penalty. The statutory scheme is less than clear on this matter. Compare § 106 with § 109 (a). See *Eastern Associated Coal Corp.* v. *Interior Bd. of Mine Operations Appeals,* 491 F. 2d 277 (CA4 1974). We need not reach the issue to dispose of this case.

[4] Those regulations have been reissued, 39 Fed. Reg. 27558–27561 (1974), since these suits were initiated. The mine operators in the companion case, *Kleppe* v. *Delta Mining, Inc., post,* p. 403, argue that this case is moot. The case is not moot because there are

vide that assessment officers assess a penalty based on a notice of violation issued by mine inspectors and a penalty schedule graduated according to the seriousness of the violation.[5]   The pt. 100 procedures follow the mandate of § 109 (a)(1) as to the criteria to be applied in determining the amount of the proposed penalty for an operator.   30 CFR § 100.4 (c).[6]

The regulations also provide that the operators are to be advised when they receive original or reissued proposed orders that they have 15 working days from the receipt of the order to "protest the proposed assessment, either partly or in its entirety."   If an operator fails to make a timely protest and request adjudication, he is "deemed to have waived his right of protest including his right of formal adjudication and opportunity for hearing . . . ."   The proposed assessment order then

assessments under the contested regulations awaiting enforcement and because the new regulations also do not provide a hearing unless one is requested.

Unless otherwise indicated, all citations to the Code of Federal Regulations throughout this opinion are to the regulations effective at the time this suit was initiated (Jan. 1, 1972, for 30 CFR, and Oct. 1, 1972, for 43 CFR).

[5] Section 100.2 (b) of the regulations states that the amount of proposed civil penalty "shall be within guidelines established by the Secretary (see Appendix A to this part) and revised periodically in the light of experience gained under the Act . . . ."   30 CFR § 100.2 (b).   Appendix A in effect at the time of this suit provided a range between $5,000 and $10,000 for violations resulting in the issuance of imminent-danger withdrawal orders (under § 104 (a) of the Act); a range between $1,000 and $5,000 for violations resulting in the issuance of other withdrawal orders (under §§ 104 (b), (c), (h), and (i) of the Act); a range between $100 and $1,000 for "serious violations"; and a range between $25 and $500 for other violations.

[6] A penalty schedule with formulas for considering the six criteria was promulgated after these suits were filed.   30 CFR § 100.3 (1975).

becomes the "final assessment order of the Secretary." 30 CFR § 100.4 (d–h).[7]

In any case in which an operator makes a timely request for a formal hearing, by so indicating in his protest, or in response to a reissued or amended proposed assessment order, the assessment officer is required to forward the matter to the Office of the Solicitor, Department of the Interior; a petition to assess a penalty can then be filed by the Solicitor with the Department's Office of Hearings and Appeals. 30 CFR § 100.4 (i)(1); 43 CFR § 4.540 (a). The petition is served on the operator who then has an opportunity to answer and secure a public hearing. 30 CFR § 100.4 (i)(2). A hearing *de novo* is conducted and the examiner is free to assess a different penalty.[8] 30 CFR § 100.4 (i)(4). The Bureau of Mines, represented by the Office of the Solicitor, has the burden of proving the penalty by a preponderance of the evidence. 43 CFR § 4.587. The regulations provide that the hearing examiner consider the statutory criteria. 43 CFR § 4.546.

---

[7] The mine operators in the companion case contend that these orders are not final since the regulations provide only that the orders become final if accepted. 30 CFR § 100.4 (h). The regulations provide that a hearing can be requested but do not specify what happens if neither the orders are accepted nor a hearing is requested. This contention is without merit. The order is final. See 30 CFR § 100.4 (e). The regulation is not misleading.

[8] These uncontested regulations provide that if an operator fails to file a preliminary statement or response to a prehearing order, the hearing examiner can issue an order to show cause why the proceedings should not be summarily dismissed. 43 CFR § 4.545 (a). If the operator fails to respond to such an order, the proceedings are summarily dismissed and remanded to the assessment officer for entry of the last proposed order of assessment (issued under 30 CFR pt. 100) as the final assessment order of the Secretary. 43 CFR § 4.545 (b).

The decision is subject to review by the Secretary's delegate, the Board of Mine Operations Appeals. 43 CFR §§ 4.1 (b)(4), 4.500 (a)(2), 4.600.

Whether or not the operator requests formal adjudication, he may obtain *de novo* judicial review of the amount of the penalty by refusing to pay it and awaiting the Secretary's enforcement action in the district court. § 109 (a)(4), 30 U. S. C. § 819 (a)(4).

(3)

The National Independent Coal Operators' Association and various operators brought suit against the Secretary in the United States District Court for the District of Columbia to enjoin the use of the pt. 100 regulations. The court granted the Association's motion for summary judgment, holding that the summary procedures were not authorized by § 109 (a) of the Act. 357 F. Supp. 509 (1973). The court noted that there were no written guidelines within the assessment office to guide the assessment officers in evaluating or applying the statutory criteria for penalty assessment. The court held that the Secretary must make express findings of fact whether or not a hearing is requested. The court believed that requiring a mine operator to request a hearing "would shift the initial burden to the mine operator." *Id.,* at 512.

The Court of Appeals for the District of Columbia Circuit reversed, holding that the Secretary need not render a formal decision incorporating findings of fact; it held that, absent a request for a hearing, the Secretary is entitled to conclude that the operator does not dispute the proposed order, including the factual basis of the violation. In the view of that court, a "decision incorporating his findings of fact" with findings and conclusions is required only if a hearing is requested and takes place; otherwise, any findings of fact would consist of essen-

tially the same information already recited in the proposed assessment order and would be a meaningless duplication. The court also noted that the legislative history of the Act supports an interpretation that the Secretary's findings are not required unless the operator requests a hearing; however, when a hearing is requested, the burden of proof remains with the Secretary. 161 U. S. App. D. C. 68, 494 F. 2d 987 (1974).

## (4)

Under the Act, a mine operator plainly has a right to notice of violations and proposed penalties; it is equally clear that an operator has a right to be heard, if a hearing is requested. In this Court the mine operators continue to urge that the Secretary may not assess a civil penalty without making formal "findings of fact" even though no hearing was requested as to the violation charged and the proposed order.

Section 109 (a)(3), as previously noted, provides:

> "A civil penalty shall be assessed by the Secretary only after the person charged with a violation under this Act has been given an opportunity for a public hearing and the Secretary has determined, by decision incorporating his findings of fact therein, that a violation did occur, and the amount of the penalty which is warranted . . . ."

The operators argue that a penalty assessment itself is an adjudicatory function and hence the Secretary must make a formal "decision incorporating his findings of fact" even when an operator has not requested a hearing on the violation issue. In short, what they argue for is the same type of formal findings of fact that are the usual product of the adversary hearing to which they have an absolute right, but which was waived by failure to make a request.

Section 109 (a)(3) provides the mine operators with no more than "an opportunity" for a hearing. The word "opportunity" would be meaningless if the statute contemplated formal adjudicated findings whether or not a requested evidentiary hearing is held. Absent a request, the Secretary has a sufficient factual predicate for the assessment of a penalty based on the reports of the trained and experienced inspectors who find violations; when the assessment officers fix penalties as the Secretary's "authorized representatives," the operators may still have review of the penalty in the district court.[9] See *Morton* v. *Whitaker,* Civ. No. 74.96 (ED Ky., Jan. 14, 1975) (appeal pending in CA6).

We therefore agree with the Court of Appeals that the language of the statute, especially when read in light of its legislative history, requires the Secretary to make formal findings of fact specified in § 109 (a)(3) only when the mine operator requests a hearing. The requirement for a formal hearing under § 109 (a)(3) is keyed to a request, and the requirement for formal findings is keyed to the same request.

This reading of the statute plainly comports with the purpose of the Act. Congressional attention was focused on the need for stricter coal mine regulations by a 1968 explosion in a Farmington, W. Va., mine which killed 78 miners, but Congress also recognized that an inordinate number of miners lose their lives in day-to-day accidents other than multidisaster situations. The Act was seen as a major step in preventing death and

---

[9] At the time of the events giving rise to these actions, the Act was enforced by the Secretary's delegate, the Bureau of Mines. The Bureau's safety and enforcement functions have since been transferred to a newly created Mining Enforcement and Safety Administration, Department of the Interior. 38 Fed. Reg. 18665–18668, 18695–18696 (1973).

injury in mines. H. R. Rep. No. 91–563, pp. 1–3 (1969). The need for stricter regulation of coal mines was commented on by President Truman when he signed the 1952 amendment to the Federal Coal Mine Safety Act, 66 Stat. 692. In approving that measure into law he called the attention of Congress to its flaws:

> "The measure contains complex procedural provisions relating to inspections, appeals, and the postponing of orders which I believe will make it exceedingly difficult, if not impossible, for those charged with the administration of the act to carry out an effective enforcement program."

Congress noted President Truman's comments when it reported the 1969 Act. S. Rep. No. 91–411, p. 5 (1969). Effective enforcement of the Act would be weakened if the Secretary were required to make findings of fact for every penalty assessment including those cases in which the mine operator did not request a hearing and thereby indicated no disagreement with the Secretary's proposed determination. While a protest by a mine operator may trigger an administrative re-examination, the protest is not the equivalent of a request for a hearing. When no request for a hearing is made, the operator has in effect voluntarily defaulted and abandoned the right to a hearing and findings of fact on the factual basis of the violation and the penalty.

The Court of Appeals for· the District of Columbia Circuit regarded § 109 as possibly ambiguous and turned to the legislative history. Assuming, *arguendo*, that the statute is ambiguous, we read that history as supporting the result reached by the Court of Appeals. The bills passed by the Senate and House each called for hearings only if requested. The House bill provided:

> "Upon written request made by an operator within thirty days after receipt of an order assessing a

penalty under this section, the Secretary *shall afford such operator an opportunity* for a hearing and, *in accordance with the request,* determine by decision whether or not a violation did occur or whether the amount of the penalty is warranted or should be compromised." H. R. 13950, 91st Cong., 1st Sess., § 109 (b) (1969). (Emphasis added.)

The Senate bill read:

"An order assessing a civil penalty under this subsection shall be issued by the Secretary only after the person against whom the order is issued has been *given an opportunity* for a hearing and the Secretary has determined by decision incorporating findings of fact *based on the record of such hearing* whether or not a violation did occur and the amount of the penalty, if any, which is warranted. Section 554 of title 5 of the United States Code shall apply to any such hearing and decision." S. 2917, 91st Cong., 1st Sess., § 308 (a)(3) (1969). (Emphasis added.)

Thus it is clear that under both bills the requirement for a formal decision with findings was contingent on the operator's request for a hearing.

Both bills were referred to a Conference Committee to resolve differences. The Conference Committee adopted the Senate version but deleted the second italicized phrase. That change did not alter the requirement that if findings of fact are desired, a hearing must be requested. The Conference Committee explained § 109 as follows:

*"Both the Senate bill and the House amendment provided an opportunity for a hearing* in assessing such penalties, but the Senate bill required a record hearing under 5 U. S. C. [§] 554. The conference substitute adopts the Senate provision with the

added provision that, where appropriate, such as in the case of an appeal from a withdrawal order, an effort should be made to consolidate the hearings. The commencement of such proceedings, however, shall not stay any notice or order involving a violation of a standard." H. R. Conf. Rep. No. 91–761, p. 71 (1969). (Emphasis added.)

No mention was made of the language deleted from the Senate bill or the similar language contained in the House bill. A change to require findings of fact without a request for a hearing would be a significant matter that would not likely have escaped attention; such a change would have called for explanation.[10]

The importance of § 109 in the enforcement of the Act cannot be overstated. Section 109 provides a strong incentive for compliance with the mandatory health and safety standards. That the violations of the Act have been abated or miners withdrawn from the dangerous area before § 109 comes into effect is not dispositive; if a mine operator does not also face a monetary penalty for violations, he has little incentive to eliminate dangers until directed to do so by a mine inspector. The inspections may be as infrequent as four a year. A major objective of Congress was prevention of accidents and disasters; the deterrence provided by monetary sanctions is essential to that objective.

We conclude, as did the Court of Appeals, that the Federal Coal Mine Health and Safety Act of 1969 does not mandate a formal decision with findings as a predicate for a penalty assessment order unless the mine

[10] A Conference Committee does not have authority to make changes on matters as to which both bills agree. 2 U. S. C. § 190c (a) (Sen. Conf. Reps.); Rule XXVIII (3), Rules of the House of Representatives; and § 546, Jefferson's Manual, H. R. Doc. No. 384, 92d Cong., 2d Sess., 526, 270–271 (1973).

operator exercises his statutory right to request a hearing on the factual issues relating to the penalty, and the judgment of the Court of Appeals is therefore

*Affirmed.*

MR. JUSTICE STEVENS took no part in the consideration or decision of this case.