Cecil D. ANDRUS, Secretary of the Interior, Petitioner,

v.

DOUBLE "Q", INC., Respondent.

Civ. No. 3–77–347.

United States District Court,
E. D. Tennessee, N. D.

Nov. 11, 1977.

John L. Bowers, Jr., U. S. Atty., Knoxville, Tenn., for petitioner.

William H. Goddard, Dandridge, Tenn., for respondent.

MEMORANDUM

ROBERT L. TAYLOR, District Judge.

This case presents the question of whether the Federal Coal Mine Health and Safety Act of 1969 requires the District Court to review *de novo*, in an enforcement proceeding to collect civil penalties, the factual basis of the violations which resulted in the assessment of the penalties, in addition to a *de novo* review of the amount of those penalties.

The Secretary of the Interior, petitioner herein, represented in this Court by the Attorney General, maintains that the Act requires *de novo* review of the facts constituting the violations.[1]

██ Similarly, the respondent, Double "Q", Inc., a partnership operating a coal mine in Claiborne County, Tennessee, maintains that review in this court is *de novo* as to all factual issues, including whether the violations occurred. The Court has reviewed the Act and relevant case law, and finds that the Act requires *de novo* review only of the amount of the penalties.

### Background

From December 1975 through March 1976, federal mine inspectors, on behalf of the Mining Enforcement and Safety Administration of the Department of the Interior (M.E.S.A.) entered Double "Q"'s "Angela No. 1 Mine" in Claiborne County acting under the inspection provisions of the Act. Over this four month period, these inspectors issued a total of twenty-five notices of violations of mandatory health and safety standards promulgated by the Secretary. Each violation was corrected within a short period of time.

M.E.S.A. then proceeded to assess a civil penalty for each violation, as required under the Act, by filing two petitions for assessment of civil penalty[2] with the Office of Hearings and Appeals of the Interior Department. In response to the two peti-

tions, Double "Q" filed answers requesting an administrative hearing on the merits of the violations listed in both petitions.

The administrative hearing was held in Knoxville on October 27, 1976. M.E.S.A. was represented at the hearing by counsel from the Department of the Interior's Regional Solicitor General's Office in Atlanta, and Double "Q" was represented by the same counsel that represented it before this Court in the present action. The burden was on M.E.S.A. at that hearing to establish that the violations did occur. The Administrative Law Judge rendered his decision on February 4, 1977, finding that all twenty-five violations had been proved and ordering Double "Q" to pay a certain penalty for each violation, ranging from $30.00 to $100.00, with the total civil penalty amounting to $1,823.00. An appeal of this decision was dismissed and another order was entered, dated March 30, 1977, ordering that the total amount of $1,823.00 be paid within thirty days. After the thirty days expired, attempts by the local United States Attorney to have the overdue fine paid failed. A petition for enforcement of the order was filed in this Court on September 1, 1977. After setting aside an erroneous default judgment, the Court granted Double "Q"'s request for a jury trial. At this point the crucial question became, as stated previously, what issues should be submitted to the jury. The Court announced its ruling prior to trial and this Memorandum Opinion is filed to explain the Court's rationale.

### Civil Penalty Section

Section 819(a)(1) of Title 30 of the U.S. Code *requires* the Secretary to assess a civil penalty against the operator of a coal mine in which a violation occurs of a mandatory health or safety standard. Each violation of these standards *may* constitute a separate offense, and the penalty for each offense cannot exceed $10,000. This subsection mandates six criteria for the Secretary

---

1. This view is attributed to the Solicitor General of the United States in the Secretary's brief.

2. Two administrative cases were involved here, the first dealing with the violations occurring in 1975, and the second covering the violations which occurred in 1976.

to consider in determining the amount of the penalty:

[1] the operator's history of previous violations;

[2] the appropriateness of such penalty to the size of the business of the operator charged;

[3] whether the operator was negligent;

[4] the effect on the operator's ability to continue in business;

[5] the gravity of the violation; and

[6] and the demonstrated good faith of the operator charged in attempting to achieve rapid compliance after notification of a violation.

Subsection (a)(3) gives the person charged with a penalty the right to a public hearing, after which the Secretary must render a written decision containing findings of fact and setting the amount of penalty for each violation proved.[3]

Subsection (a)(4) is the foundation for the present proceeding. It reads as follows:

"(4) If the person against whom a civil penalty is assessed fails to pay the penalty within the time prescribed in such order, the Secretary shall file a petition for enforcement of such order in any appropriate district court of the United States. The petition shall designate the person against whom the order is sought to be enforced as the respondent. A copy of the petition shall forthwith be sent by registered or certified mail to the respondent and to the representative of the miners in the affected mine or the operator, as the case may be, and thereupon the Secretary shall certify and file in such court the record upon which such order sought to be enforced was issued. The court shall have jurisdiction to enter a judgment enforcing, modifying, and en-

forcing as so modified, or setting aside in whole or in part the order and decision of the Secretary or it may remand the proceedings to the Secretary for such further action as it may direct. The court shall consider and determine de novo all relevant issues, except issues of fact which were or could have been litigated in review proceedings before a court of appeals under section 816 of the title, and upon the request of the respondent, such issues of fact which are in dispute shall be submitted to a jury. On the basis of the jury's findings, the court shall determine the amount of the penalty to be imposed. Subject to the direction and control of the Attorney General, as provided in section 507(b) of Title 28, attorneys appointed by the Secretary may appear for and represent him in any action to enforce an order assessing civil penalties under this paragraph."

Focusing on the fourth, fifth and sixth sentences of this subsection, the following observations are pertinent. The power of the Court is limited in the fourth sentence, to entering a judgment:

[1] enforcing; [or]

[2] modifying, and enforcing as so modified; or

[3] setting aside in whole or in part the order and decision of the Secretary.

Additionally, the Court may "remand the proceedings to the Secretary or the Panel for such further action as it may direct." This language is very similar to the language describing the power of appellate courts in reviewing orders of the Secretary in Section 816(b) of Title 30.[4] This type of review power is commonly associated with a limited scope of review, e. g., Section 816(b) specifically limits factual review to a "substantial evidence" test. Furthermore, re-

---

**3.** This subsection was at issue in *National Coal Operators Ass'n. v. Kleppe*, 423 U.S. 388, 96 S.Ct. 809, 46 L.Ed.2d 580 (1976). The Supreme Court ruled that formal findings of fact are required *only* when a hearing is requested.

**4.** 30 U.S.C. § 816(b) provides:

"Evidence; conclusiveness of findings; orders

(b) The court shall hear such petition on the record made before the Secretary or the Panel. The findings of the Secretary or the Panel, if supported by substantial evidence on the record considered as a whole, shall be conclusive. *The court may affirm, vacate, or modify any order or decision or may remand the proceedings to the Secretary or the Panel for such further action as it may direct.*" (Emphasis Added)

manding the proceedings for further action would not appear to be a proper disposition of the action if *every* determination made in the administrative proceedings had to be reached *de novo* in the district court.

■ The fifth sentence of this subsection requires the District Court to determine *de novo* "all relevant issues" except issues of fact which were or could have been "*litigated* in review proceedings before a court of appeals under Section 816." The only way issues of fact can be "litigated" in the appellate courts is under the "substantial evidence" test. It would be inconsistent, if not unfair, for Congress to have the standard of review vary depending on the fortuity of the type of order which is at issue.[5] It would appear that Congress logically intended to have facts of the same *type* as those reviewed by appellate courts, under Section 816, reviewed under the same standard of review in the district courts under Section 819. This would make the substitution provision, whereby facts litigated, or those that could have been litigated, under Section 816 are binding in District Court, a logical provision to prevent the duplication of judicial proceedings.

This conclusion leaves the Court with the problem of explaining the meaning of the language referring to *de novo* review. An answer to the problem would be apparent if there was a kind of factual determination which is presented in the enforcement proceeding in District Court that would never be reached in the appellate review process. If there was a kind of factual determination reached only in district court proceedings under Section 819 proceedings and if, for some reason, it would warrant special consideration such that *de novo* review would be logical, then Congress could logically have intended to apply a different scope of review only to that kind of factual determination.

One factual determination necessary in an enforcement proceeding in District Court that would never be considered in the appellate process is the determination of penalties. By leaving the amount of civil penalties subject to *de novo* review, Congress was offering protection to the offender where it is most important, his pocketbook. At the same time other factual findings made during the extensive administrative procedures are subject only to a substantial evidence review, thereby encouraging the full use of the administrative procedures set up under the Act.

■ In reaching the *de novo* decision on the penalties, the trier of fact in the District Court is bound to follow the six criteria enumerated in the statute. This procedure is consistent with the earlier language in this subsection that refers to this action as an "enforcement" proceeding as opposed to a "civil action" which contemplates the usual, completely *de novo* trial.

■ Finally, the sixth sentence of this subsection gives the Court the power to determine the amount of the penalty based on the jury's findings. Reading the Act as a whole, and considering the jury's usual role in determining dollar amounts of liability, the Court is of the opinion that this provision allows the Court a limited review of the jury's verdict, setting it aside only when a reasonable range was violated, based on what a rational person could conclude as to the facts.

The issue presented in this interpretation of the statute, as far as the Court can determine, is a question of first impression. There is support for the Court's position, albeit dictum, in at least two appellate court opinions. See *National Coal Operators Ass'n. v. Kleppe*, 423 U.S. 388, 96 S.Ct. 809, 46 L.Ed.2d 580 (1976) (Burger, C. J., for a unanimous court); and *Eastern Associated Coal Corp. v. Interior Bd. of Mine Operations Appeals*, 491 F.2d 277 (4th Cir. 1974).

In the *Coal Operators* decision, Chief Justice Burger referred, more than once, to the

---

**5.** Orders to withdraw all miners pending termination of an imminent danger are reviewable by Courts of Appeals under Section 816. Orders to pay civil penalties because of violations of mandatory standards, including violations for which no withdrawal order was issued, are reviewable in district courts under Section 819.

enforcement proceeding authorized in this statute as an entitlement to a trial *de novo* as to the amount of the penalty. The initial sentence of the opinion refers to a civil penalty as "being enforceable only by way of a subsequent judicial proceeding in which the operator is entitled to a trial *de novo* as to the *amount* of penalty." (Emphasis added). 423 U.S. at 390, 96 S.Ct. at 811. Later in the opinion reference is made to the operator's option, upon having a penalty assessed, to "obtain *de novo* judicial review of the *amount* of the penalty by refusing to pay it and awaiting the Secretary's enforcement action in the district court." (Emphasis added). 423 U.S. at 396, 96 S.Ct. at 813. While these portions of the opinion obviously lend support to the interpretation presented herein, the Supreme Court specifically noted that it was not deciding the question on the merits. 423 U.S. at 393, n. 3, 96 S.Ct. 809. But it is apparent that the Supreme Court was aware of the problem which would be presented to district courts if all of the issues in these coal cases were to be tried *de novo.*

### Presumption Against De Novo Review

■ Absent specific requirements to the contrary, courts will presume that administrative proceedings are not subject to *de novo* review. See *Chandler v. Roudebush,* 425 U.S. 840, 861, 96 S.Ct. 1949, 48 L.Ed.2d 416 (1976). In the present case the Act does not clearly require *de novo* review of both the penalties and the facts concerning the violations. The administrative record developed below is voluminous and includes, among other items, 126 pages of transcript of the hearing. The Court is of the opinion that it would frustrate these extensive administrative procedures if the entire administrative record were to be completely disregarded whenever a respondent failed to pay an assessed penalty, thereby forcing the Secretary to file a petition for enforcement of the assessment order in a district court. However, *de novo* review of the amount of the penalty would serve to protect the operators in that the actual amount of the penalty could be redetermined either by a jury of his peers or by the Court.

### Legislative History

Review of the legislative history affords little additional insight. The initial Senate Bill (S. 2917) contained the specific requirement that review in the district court was, as to *all* factual issues, only a "substantial evidence" review. 115 Cong.Rec. 28256 (1969). Next the House passed an amended version of the Senate Bill (H.R. 13950) which failed to mention a standard of review, referring only to a "civil action . . . to collect the penalty." 115 Cong.Rec. 32064 (1969). The Bill reported out of conference is what appears in the Code now. The Conference Report simply rephrases the language that appears in the statute. The final bill no longer refers to a "civil action" but terms the proceeding as one of "enforcement". In light of the failure to specifically include language requiring *complete de novo* review of all the facts, the Court believes a reasonable interpretation of the Act is that Congress meant to provide for *de novo* review of the factual conclusion required in order to assess a penalty and of the amount of the penalty, and for substantial evidence review of the underlying administrative record wherein the violations are determined to have been proved or not proved.

### Review of the Record Below

■ The Court has reviewed the administrative record below and has found substantial evidence, on the record as a whole, to support the factual conclusions of the Secretary that the violations did occur.

### Conclusion

For the foregoing reasons, it is ORDERED that the Secretary's finding that twenty-five violations occurred in the mine operated by this respondent, be and the same hereby is affirmed. It is further ORDERED that, because the jury's findings as to the amount of penalties are reasonable, the findings of jury on the amount of the penalties be, and the same hereby are, entered as the final judgment in this enforcement proceeding.

Order Accordingly.