**ViAIDS LABORATORIES, INC. and Metro Mailers Service, Inc., Plaintiffs,**

v.

**UNITED STATES POSTAL SERVICE, Defendant.**

**No. 79 Civ. 38 (CHT).**

United States District Court, S. D. New York.

Jan. 18, 1979.

William L. Finger, Kew Gardens, N.Y., for plaintiffs.

Robert B. Fiske, Jr., U.S. Atty., S.D. N.Y., New York City, for defendant; Leslie R. Bennett, Asst. U.S. Atty., Louis A. Cox, Gen. Counsel, U.S. Postal Service, Thomas A. Ziebarth, Counsel, Washington D.C., of counsel.

## OPINION

TENNEY, District Judge.

Plaintiffs ViAids Laboratories, Inc. ("ViAids") and Metro Mailers Service, Inc. ("Metro") commenced this action to seek review of a determination and order of the United States Postal Service barring them from receiving mail and cashing postal

money orders and to seek an order requiring the Postal Service to proceed judicially rather than administratively. Plaintiffs contemporaneously brought on an order to show cause for a temporary restraining order and a preliminary injunction staying the effect of the agency's order pending determination of this action. On January 3, 1978, United States District Judge Henry F. Werker, while in Part I, signed the order to show cause and set January 12, 1979 as the date for the hearing on the preliminary injunction. On January 12, the hearing was held before this Court. At the hearing, the Court continued the TRO until decision and gave the parties until January 16 to provide additional argument. For the reasons given below, the application for a preliminary injunction is denied.

*Background*

On October 27, 1978 the Postal Service filed an administrative complaint against ViAids [1] and Metro, alleging that they were falsely representing various products as "sexual stimulants or aphrodisiacs" as part of a mail fraud scheme in violation of 39 U.S.C. § 3005.[2] On October 30, 1978, the case was assigned to William A. Duvall, Chief Administrative Law Judge, and a notice of hearing, setting a hearing date for November 27, was issued. Copies of the complaint, the assigning order, and the notice of hearing were subsequently served at the addresses set forth in the complaint. Personal service on ViAids at its 42d Street address was effected on November 3, 1978 by a Postal Service supervisory employee; Harold A. Roth, who signed as President and "Agent for ViAids," accepted service. Likewise, a supervisory employee personally served E. Higgins at Metro on November 6. Service on ViAids's 34th Street address was made on November 6 by a regular mail carrier.[3]

The notice of hearing indicated that if ViAids and Metro wanted to oppose the order sought in the complaint, they had to file an answer no later than fifteen calendar days from the date of the service of the

---

1. The complaint designated two addresses for ViAids: 1 East 42nd Street in New York City and 225 West 34th Street in New York City.

2. 39 U.S.C. § 3005 provides in pertinent part:
   (a) Upon evidence satisfactory to the Postal Service that any person is engaged in conducting a scheme or device for obtaining money or property through the mail by means of false representations . . . the Postal Service may issue an order which—
   (1) directs the postmaster of the post office at which mail arrives, addressed to such a person or to his representative, to return such mail to the sender appropriately marked as in violation of this section, if the person, or his representative, is first notified and given reasonable opportunity to be present at the receiving post office to survey the mail before the postmaster returns the mail to the sender; and
   (2) forbids the payment by a postmaster to the person or his representative of any money order or postal note drawn to the order of either and provides for the return to the remitter of the sum named in the money order or postal note.
   (b) The public advertisement by a person engaged in activities covered by subsection (a) of this section, that remittances may be made by mail to a person named in the advertisement, is prima facie evidence that the latter is the agent or representative of the advertiser for the receipt or remittances on behalf of the advertiser. The Postal Service may ascertain the existence of the agency in any other legal way satisfactory to it.

3. The service regulation, 39 C.F.R. § 952.8 provides:
   (a) The Docket Clerk shall cause a notice of hearing and a copy of the complaint to be transmitted to the postmaster at any office of address of the respondent or to the inspector in charge of any division in which the respondent is doing business, which shall be delivered to the respondent or his agent by said postmaster or a supervisory employee of his post office or a postal inspector. A receipt acknowledging delivery of the notice shall be secured from the respondent or his agent and forwarded to the Docket Clerk, U.S. Postal Service, Washington, DC 20260, to become a part of the official record.
   (b) If, after 5 days, the postmaster or his agent can find no person to accept service of the notice of hearing and complaint pursuant to paragraph (a) of this section, the notice may be delivered in the usual manner as other mail addressed to the respondent. A statement, showing the time and place of delivery, signed by the postal employee who delivered the notice of hearing and complaint shall be forwarded to the Docket Clerk and such statement shall constitute evidence of service.

complaint. The notice further indicated that failure to file a timely answer would cause a default order to be issued. Because no answer was filed by November 21, 1978 (fifteen days from the last service) the Postal Service moved for the entry of a default order on November 22. On the same date, the case was certified by the administrative law judge to the judicial officer for action under the administrative default provision.[4]

On November 22, one day after the last day for filing the answer, William L. Finger, attorney for defendants, telephoned a Postal Service judicial officer to request additional time.[5] The latter advised Mr. Finger to file a motion for leave to file a late answer setting forth the reasons for the delay. Mr. Finger did so, explaining

> that the delay in filing an answer was due to the fact that the principal of the respondent corporations was out of town at the time of the mail delivery of said complaints, and the business enterprises are small, with no other employee authorized to open the mail. It is respectfully submitted that had personal service been made to forcefully alert respondents to this complaint, undoubtedly the answer would have been timely filed.

Affidavit of William L. Finger, dated Nov. 28, 1978. He added that "respondents have substantial defenses to this action, which raise Constitutional issues," and that the short delay would not prejudice the Government. *Id.*

On November 30, the Postal Service filed papers opposing the motion to set aside the default. On December 15, Judicial Officer James A. Cohen issued two orders. In the first, he denied the motion to set aside the default judgment and, in the second, he ordered that mail directed to ViAids and Metro be stopped and that they be prohibited from cashing postal money orders.

In the order denying the motion to set aside the default judgment, Mr. Cohen concluded that the complaint had been properly served under the applicable rules and that ViAids and Metro were in default. He was not persuaded by their excuse for their failure to file a timely answer.

> Respondents have not shown the dates on which their Vice President was out of town, when he first learned of the existence of the Complaint, or how much time was consumed in forwarding the Complaint to Respondents' attorney instead of immediately filing an Answer or requesting an extension of time. It is presumed the answer to these questions would not support the requested extension. I am also not persuaded that Respondents' Vice President is the only person authorized to open Respondents' mail.

Order of Judicial Officer James A. Cohen, dated Dec. 15, 1978, at 3–4. Accordingly, he denied the requested extension and issued the remedial order under 39 U.S.C. § 3005. The remedial order stopping the mail and barring the cashing of postal money orders was subsequently stayed through January 3, 1979. Order and Supplement A of Judicial Officer James A. Cohen, dated Dec. 22, 1978.[6] The instant action was then commenced, and it subsequently assumed its current posture.

ViAids and Metro argue that the Postal Service acted arbitrarily and capriciously in denying them a hearing on the charges. Specifically, they contend, as they did in the motion before the agency to set aside the default, that service had been made on non-managerial employees, that the managing employee was out of town at the time, and that, accordingly, counsel received the com-

---

**4.** 39 C.F.R. § 952.11(a) provides:

> If the respondent fails to file an answer within the time specified in the notice of hearing, he shall be deemed in default, and to have waived hearing and further procedural steps. The Judicial Officer shall thereafter issue an order without further notice to the respondent.

**5.** 39 C.F.R. § 952.13 provides that "[c]ontinuances and extensions will not be granted by the presiding officer except for good cause shown."

**6.** The order staying the effect of the agency action constitutes final agency action. *See* 39 C.F.R. § 952.25(a) (party who failed to file an answer may not appeal).

plaint too late to file a timely answer. They argue as a corollary that they never waived their right to a hearing. Finally, they argue that the sexual materials and their dissemination are presumptively protected by the first amendment and therefore that these businesses may not be restrained without a judicial hearing.

The Government responds that the Postal Service's denial of the motion to set aside the default was not arbitrary, capricious, or an abuse of discretion. In addition to the reasons set out in the judicial officer's December 15 order, the Government refers to the absence of an affidavit from a corporate officer explaining the reasons for the late filing with credible detail. The Government finds it impossible to believe that not even the purported president of ViAids had authority to open the entity's mail. Further, the Government argues that the significant public interest in halting a scheme to defraud the public requires promptness. Finally, the Government argues that the Postal Service may proceed against ViAids and Metro by an agency proceeding without resorting to a judicial action—*i. e.,* that 39 U.S.C. § 3005 is constitutional.

*Discussion*

■ A preliminary injunction may issue "only upon a clear showing of either (1) probable success on the merits *and* possible irreparable injury, *or* (2) sufficiently serious questions going to the merits to make them a fair ground for litigation *and* a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Sonesta International Hotels Corp. v. Wellington Associates,* 483 F.2d 247, 250 (2d Cir. 1973), *quoted with original emphasis in Triebwasser & Katz v. American Telephone and Telegraph Co.,* 535 F.2d 1356, 1358 (2d Cir. 1976). Here, plaintiffs have failed to meet either standard: they have failed to show probable success on the merits, required under the first prong, and they have failed to show sufficiently serious questions going to the merits, required under the second prong.

*The Constitutionality of 39 U.S.C. § 3005*

Plaintiffs have challenged the agency's jurisdiction to determine that they are in violation of 39 U.S.C. § 3005. They contend that their activities, the distribution of sexually oriented materials, are presumptively protected by the first amendment, and that, accordingly, the agency must proceed against them judicially. They argue, in essence, that 39 U.S.C. § 3005 is unconstitutional as applied to their activities and rely on *Freedman v. Maryland,* 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965), and *Blount v. Rizzi,* 400 U.S. 410, 91 S.Ct. 423, 27 L.Ed.2d 498 (1971).

In *Freedman* the Supreme Court invalidated a motion picture censorship procedure administered by a state agency. In so doing, it held that any noncriminal process that requires the prior submission of a film to a censor must meet certain procedural safeguards: the censor must bear the burden of proving that the film is unprotected expression; a final restraint may not be imposed except by a judicial determination, and any restraint in advance of a final judicial determination on the merits must be limited to the preservation of the status quo for the shortest fixed period compatible with sound judicial discretion; and the procedure must assure a prompt final decision. In *Rizzi* the Court applied the *Freedman* safeguards to declare unconstitutional the administrative procedure by which the Postmaster General could halt use of the mails and postal money orders for commerce in allegedly obscene materials, 39 U.S.C. § 3006 (previously *id.* § 4006), and the procedure by which he could obtain a court order allowing him to detain the defendant's incoming mail pending the outcome of the section 3006 proceedings against him, *id.* § 3007 (previously *id.* § 4007).

■ Plaintiffs' reliance on *Freedman* and *Rizzi* is misplaced. The procedural safeguards mandated by those cases are "inappropriate, unnecessary and inapplicable to the field of commercial fraud." *Lynch v. Blount,* 330 F.Supp. 689, 694 (S.D.N.Y.1971)

(three-judge court), *aff'd,* 404 U.S. 1007, 92 S.Ct. 673, 30 L.Ed.2d 656 (1972); *accord, Hollywood House International, Inc. v. Klassen,* 508 F.2d 1276, 1277 (9th Cir. 1974); *Original Cosmetics Products, Inc. v. Strachan,* 459 F.Supp. 496 (S.D.N.Y.1978); *United States v. Outpost Development Corp.,* 369 F.Supp. 399, 401 (C.D.Cal.), *aff'd,* 414 U.S. 1105, 94 S.Ct. 832, 38 L.Ed.2d 733 (1973). In *Lynch,* the principal case in point, the court upheld 39 U.S.C. § 3005 against a first and fifth amendment challenge brought by a business that used the mails to advertise and sell a fat-reducing program. The court reasoned that the *Freedman* safeguards are unnecessary in commercial fraud, in contrast to obscenity, because "the ultimate finding of true or false is arrived at by the use of the plain and simple tools affecting credibility and the weighing of [traditional] proofs." 330 F.Supp. at 695.

■ The instant case is not less of a garden-variety commercial fraud case because the products touch in some way on the broad field of sexuality. *See Original Cosmetics Products, Inc., supra,* at 498. In that case, which involved products similar to those in the instant case, Judge Sand wrote that he found it "difficult to distinguish cases dealing with 'good old-fashioned schemes to defraud' with the instant case where plaintiff . . . sold common variety red pepper as 'Imitation Spanish Fly' for $5.95 per 24 tablet bottle." *Id.* A fair reading of the administrative complaint in the instant action places the offending advertisements in the commercial-fraud category, regardless of the sexual aspect of the products.[7] The Postal Service therefore had jurisdiction to proceed administratively.

*Denial of Motion to Set Aside the Default*

■ In attempting to set aside the default, plaintiffs submitted that "had personal service been made to forcefully alert [them] to this complaint, undoubtedly the answer would have been timely filed." Affidavit of William L. Finger, dated Nov. 28, 1978, at 2. The judicial officer correctly found, however, that the record establishes that proper service was made. Pursuant to 39 C.F.R. § 952.8(a), personal service was made at two of the addresses set out in the complaint, and the third address was served by regular mail carrier, *id.* § 952.8(b). Plaintiffs' argument that they were not served forcefully enough is of little weight against the fact that the complaint was served on a person who signed as president and agent for ViAids.[8]

■ In light of the proper service in the agency action, plaintiffs' corollary argument that they never waived a hearing—and that they are entitled to a hearing—must be rejected. Due process requires not that the plaintiffs be given a hearing, but rather merely that they be given the opportunity for a hearing. *See National Independent Coal Operators Association v. Kleppe,* 423 U.S. 388, 398–402, 96 S.Ct. 809,

---

7. The administrative complaint alleged, *inter alia,* (3) that by means of advertising materials, ViAids and Metro represented that:

    (h) ERECTION PILLS will increase the dimensions and firmness of the male user's penis during erection;

    (k) The following products, all sold under the "SPURIOUS" brand label, are effective sexual stimulants or aphrodisiacs: SPANISH FLY SUGAR, NYMPHOS, STINGERS, LOVE STIMULANT, HYPNOTIC POWDER, PUSSY POWDER, SEDUCING POWDER, VAGINA TEASER, HOT LICKS, EROTIC PLEASURE, CLITORIS POWDER, CUNNILINGUS POWDER and VAGINAL POWDER.

    One of the advertisements attached to the complaint represented that Imitation Spanish Fly "[c]onsists of rare combination of secret scientific ingredients to impart that special 'turned on' effect. Quickly dissolves in cocktails, coffee, drinks, etc. Lasts for hours. One ounce."

8. The first affirmative defense in the proposed answer contains the assertion that service was made on ViAids at its second address by regular mail carrier without any genuine effort to effect personal service as 39 C.F.R. § 952.8(b) appears to require. Although the proofs submitted by the agency do not detail these efforts, *see* Receipt for Delivery of Citation on 225 West 34th Street, the regulation does not on its face require such a showing. 39 C.F.R. § 952.-8(b). Furthermore, ViAids can neither claim lack of notice or prejudice: not only was it served at both addresses, but the person served at the first address signed as president and agent for ViAids. Receipt for Delivery of Citation on ViAids at 1 East 42nd Street.

46 L.Ed.2d 580 (1976). By failing to make a timely response to the administrative complaint, plaintiffs failed to exercise that opportunity.

■ Plaintiffs' principal contention, which incorporates the two previous contentions, is that the agency's refusal to allow them to file a late answer was arbitrary, capricious, or an abuse of discretion within the meaning of 5 U.S.C. § 706. The decision whether to grant an extension lies in the sound discretion of the agency, and reviewing courts will not interfere with the agency's decision except upon a clear showing of abuse. *Freight Consolidators Cooperative, Inc. v. United States,* 230 F.Supp. 692, 700 (S.D.N.Y.1964); *see NLRB v. Aaron Convalescent Home,* 479 F.2d 736 (6th Cir. 1973). Here, the judicial officer suggested that ViAids and Metro file a motion to set aside the default and, after they did so, considered it and the accompanying affidavit to determine whether they had shown good cause for an extension. He found

their excuses for failing to file a timely answer lacking in both detail and credibility, and he so explained in his order. In view of the plaintiffs' poorly justified delay in responding to the administrative complaint and absent the vaguest suggestion of a meritorious defense to the charges in the complaint, this Court cannot say that the agency action was arbitrary, capricious, or an abuse of discretion.[9]

## Conclusion

■ The plaintiffs' arguments that 39 U.S.C. § 3005 is unconstitutional and that the agency's refusal to set aside the default was arbitrary, capricious, or an abuse of discretion are without merit. Accordingly, their application for a preliminary injunction to bar the Postal Service from detaining their mail and from preventing their cashing postal money orders and for an order requiring the agency to proceed judicially is denied.

So ordered.

**9.** In determining whether the Postal Service had abused its discretion in denying the motion to set aside the default, the Court looked for guidance to the case law under Federal Rule of Civil Procedure 60(b) because of the paucity of case law reviewing defaults before agencies. After considering standards set by appellate courts in reviewing district court decisions under Rule 60(b), this Court concludes that, under this analogous law as well, the agency did not abuse its discretion.

In reaching this conclusion, the Court has given due regard to reasons supporting a reversal: first, the Government's interest in halting an allegedly fraudulent scheme was prejudiced little or not at all by the plaintiffs' delay in responding to the complaint. The hearing could have been held at the scheduled time or immediately thereafter had plaintiffs' request been granted. Second, the plaintiffs will be effectively deprived of their businesses without a hearing on the merits—too drastic a result to be countenanced without careful scrutiny. The third reason, a corollary of the second, is the danger that decisions on the merits will be made in the guise of procedural decisions. Fourth, again a corollary of the second reason, is the preference in the law for decisions on the merits. *Medunic v. Lederer,* 533 F.2d 891, 894 (3d Cir. 1976); *Tozer v. Charles A. Krause Milling Co.,* 189 F.2d 242, 245 (3d Cir. 1951); 6

Moore's *Federal Practice* ¶ 55.10[1], at 55–234 to –236. And finally, a standard of liberality should be applied in considering motions to set aside defaults. *Medunic, supra; Tozer, supra;* 6 Moore's, *supra* ¶ 55.10[2], at 55–237.

The reasons to uphold the agency's decision are more compelling, however. First is the strong reluctance of reviewing courts, when considering decisions under Rule 60(b), to substitute their judgment for that of the trial courts. *E. g., Smith v. Stone,* 308 F.2d 15, 17–18 (9th Cir. 1962); *Nederlandsche Handel-Maatschappij, N. V. v. Jay Emm, Inc.,* 301 F.2d 114, 115 (2d Cir. 1962). A second reason, as discussed in the text *supra,* is the failure of the plaintiffs to particularize their excuses for a late response. Finally, this Court would not set aside the agency's decision without a showing of a meritorious defense. *See Medunic, supra,* 533 F.2d at 893; 6 Moore's, *supra* ¶ 55.10[1], at 55–232 to –234. The first, second, and part of the third affirmative defenses have been considered herein and have been rejected. The additional allegation in the third defense that the products can produce the promised results through "suggestion, psychological or other stimuli" was disposed of in *Original Cosmetics Products, Inc., supra,* and the Magistrate's Report incorporated therein. The fourth affirmative defense addresses venue and does not affect this decision.