**UNITED STATES of America,
Appellant,**

v.

**F. Boyd FOWLER, d/b/a Fowler & Chaney Coal Company and Glen A. Smith, d/b/a Loose Jaw Coal Company, Appellees.**

**No. 80–1259.**

United States Court of Appeals,
Fourth Circuit.

Argued Feb. 4, 1981.

Decided April 21, 1981.

Rehearing and Rehearing En Banc
Denied July 2, 1981.

John S. Edwards, U. S. Atty., Enoch E. Ellison, Sp. Asst. U. S. Atty., Roanoke, Va.

(Thomas R. King, Jr., Asst. U. S. Atty., Roanoke, Va., on brief), for appellant.

Eugene K. Street, Grundy, Va. (Street, Street & Street, Grundy, Va., on brief), and Thomas W. McCandlish, Richmond, Va. (Richard L. Williams, Robert E. Payne, McGuire, Woods & Battle, Richmond, Va., on brief), for appellees.

Before MURNAGHAN and ERVIN, Circuit Judges, and MERHIGE *, District Judge.

ERVIN, Circuit Judge:

The government appeals denial of its motion for partial summary judgment, the district court, 484 F.Supp. 843 having certified an issue as a controlling question of law, which permits an interlocutory appeal under 28 U.S.C. § 1292(b). We affirm.

I.

Between 1970 and 1976, the Secretary of the Interior (the Secretary) inspected coal mines operated by J. Boyd Fowler d/b/a Fowler & Chaney Coal Company (Fowler) and Glen Smith d/b/a Loose Jaw Coal Company (Smith) and issued numerous notices of violations of the mandatory safety standards of the Federal Coal Mine Health and Safety Act of 1969, Pub.L. 91–173, 83 Stat. 742, 30 U.S.C. § 801 et seq. (the Act).[1] Pursuant to section 104(b) of the Act, the inspector fixed times for the abatement of the violations.[2]

In order to avoid having their mines closed, both Fowler and Smith abated the alleged violations within the allotted times, but they refused to pay the civil penalties

* The Honorable Robert R. Merhige, Jr., United States District Judge for the Eastern District of Virginia, sitting by designation.

1. Although the 1969 Act was substantially altered by the Federal Mine Safety and Health Amendments Act of 1977, Pub.L. 95–164, 91 Stat. 1290, 30 U.S.C. § 801 et seq., the 1977 Act is not at issue in this case.

2. Section 104 provides two procedures mine inspectors are to follow if health and safety standards have not been met. Section 104(a) provides that if "an imminent danger exists," then a withdrawal "order" is to issue. Section

assessed by the Secretary under section 109(a)(1) of the Act. The Secretary brought enforcement proceedings in district court, and the cases were consolidated for trial.

Fowler and Smith denied having committed the violations and requested a de novo trial by jury under section 109(a)(4) of the Act, which provides in pertinent part:

The [district] court shall have jurisdiction to enter a judgment enforcing, modifying, and enforcing as so modified, or setting aside in whole or in part the order and decision of the Secretary [under section 109(a)(3)] or it may remand the proceedings to the Secretary for such further action as it may direct. The court shall consider and determine de novo all relevant issues, except issues of fact which were or could have been litigated in review proceedings before a court of appeals under section 106 of this title, and upon the request of the respondent, such issues of fact which are in dispute shall be submitted to a jury. On the basis of the jury's findings, the court shall determine the amount of the penalty to be assessed.

30 U.S.C. § 819(a)(4).

The government moved for partial summary judgment on the issue of liability, arguing that because the validity of the violations could have been litigated under the review procedures of sections 105 and 106 of the Act, only the amount of penalty could be determined de novo in the district court under section 109(a)(4). Section 105(a)(1), providing for review by the Secretary, reads in part:

104(b) provides, however, that if "there has been a violation of any mandatory health or safety standard but the violation has not created an imminent danger," then a "notice" shall be issued "fixing a reasonable time for the abatement of the violation." The alleged violations for which Fowler and Smith were cited did not rise to the level of danger requiring issuance of a withdrawal order. If, however, they had failed to abate the violations, the Secretary would have been entitled to issue a withdrawal order. 30 U.S.C. § 814(b).

An operator issued an order pursuant to the provisions of section 104 of this title, or any representative of miners in any mine affected by such order or by any modification or termination of such order, may apply to the Secretary for review of the order within thirty days of receipt thereof or within thirty days of its modification or termination. An operator issued a notice pursuant to section 104(b) or (i) of this title, or any representative of miners in any mine affected by such notice, may, if he believes that the period of time fixed in such notice for the abatement of the violations is unreasonable, apply to the Secretary for review of the notice within thirty days of the receipt thereof.... Upon receipt of such application, the Secretary shall ... enable the operator and the representative of miners in such mine to present information relating to the issuance and continuance of such order or the modification or termination thereof or to the time fixed in such notice.

30 U.S.C. § 815(a)(1).

And section 106(a), outlining procedures for judicial review of the Secretary's orders and decisions, reads in part:

Any order or decision issued by the Secretary or the Panel under this Act, except an order or decision under section 109(a) of this Act, shall be subject to judicial review by the United States court of appeals for the circuit in which the affected mine is located, or the United States Court of Appeals for the District of Columbia Circuit, upon the filing in such court within thirty days from the date of such order or decision of a petition by any person aggrieved by the order or decision praying that the order or decision be modified or set aside in whole or in part, except that the court shall not consider such petition unless such person has exhausted the administrative remedies available under this Act.

30 U.S.C. § 816(a).

Fowler and Smith argued that a section 104(a) violation notice is not reviewable under section 106, although a withdrawal order is: a section 105 administrative appeal must precede review by a court of appeals under section 106, and under section 105 administrative review of notices is limited to whether the abatement time is reasonable. Because they chose to correct the alleged violations within the allotted time, they argue, they could no longer contest the reasonableness of the time and therefore had no administrative remedy. There was, they contended, no order or decision of the Secretary for an appellate court to review under the statutory scheme of section 106, and section 109(a)(4) therefore does not preclude de novo review in this case.

The district court agreed with Fowler and Smith and denied the government's motion, interpreting section 105(a)(1) to be applicable in notice cases only for review of the abatement time, not for review of the underlying violations. It found that section 109(a)(4) excludes de novo review in notice cases only of the reasonableness of the abatement period.

II.

In order to decide whether Fowler and Smith are now entitled to review on the merits, we must determine whether they could have litigated the validity of the violations notices under section 106, for if they could have done so, they are precluded from making the challenge de novo in a section 109 enforcement proceeding. The outcome of this inquiry depends upon whether they could have had a section 105(a)(1) administrative review of the underlying violations or merely of the reasonableness of the abatement time: without administrative review of the merits of the charges, there could have been no judicial review of the merits under section 106.

In our opinion, the language of section 105(a)(1) is plain: the only challenge an operator issued a notice may make is to the reasonableness of the abatement time, although one issued an order may get administrative review on the merits. This interpretation is based on the clear distinction in section 105(a)(1) between the review procedures for withdrawal orders and violations

notices.[3] An operator receiving an order may, without condition, "apply to the Secretary for review of the order," and may "present information relating to the issuance and continuance of such order." 30 U.S.C. § 815(a)(1). An operator receiving a notice, however, "may, *if he believes that the period of time fixed in such notice for the abatement of the violation is unreasonable*, apply to the Secretary for review of the notice," and may "present information relating . . . *to the time fixed in such notice.*" *Id.* (emphasis added). The necessary implication is that a violations notice is subject to agency review, and therefore appellate court review, only of the reasonableness of the allotted abatement time.

An operator receiving a notice thus may take one of three avenues available under sections 105, 106 and 109. He may seek review prior to abating the alleged violation, with review being limited to the reasonableness of the time allotted. He may choose to abate the violation, at which time the issue of reasonableness becomes moot and he is no longer entitled to agency review; any review on the merits would be available only through a section 109 enforcement proceeding. *See Lucas Coal Co. v. Interior Board of Mine Operations Appeals*, 522 F.2d 581, 587 (3d Cir. 1975). In addition the operator may refuse to abate the violation within the allotted time, according the Secretary the right to issue a withdrawal order under section 105(a)(1); the operator could then receive full review on the merits. *Id.*

Unless, therefore, the operator issued a notice is willing to subject his mines to closure, he is unable under section 105(a)(1) to contest the validity of the underlying violation on an agency appeal, and hence cannot qualify for section 106 appellate review. Because section 109 does not preclude review de novo of the alleged violation unless the operator has had the opportunity to contest it in the court of appeals, that breadth of review will not be precluded in this case. Operators such as Smith and Fowler who have corrected noticed violations without questioning the reasonableness of the abatement period—thereby foreclosing section 105 and section 106 review of the charges either on the reasonableness issue or on the merits—are entitled to de novo review in a section 109 enforcement proceeding.

We recognize that this result is at odds with the Sixth Circuit's decision in *Andrus v. Double "Q", Inc.*, 617 F.2d 602 (1980), *aff'g* 466 F.Supp. 8 (E.D.Tenn.1977) (de novo trial under section 109(a)(4) only of the amount of penalty and not of the underlying violation, impliedly because the existence of the violation was a factual determination that would have been reached in the appellate review process). We decline, however, to follow *Double "Q"*.

The district court's reasoning in *Double "Q"*, adopted by the Sixth Circuit, fails to convince us for two reasons. First, the district court's interpretation of the statute ignores the clear distinction made between "notices" and "orders." Second, the court's only support for holding that abated violations could be litigated under sections 105–106 came in the form of dictum in *National Independent Coal Operators' Ass'n. (NICOA) v. Kleppe*, 423 U.S. 388, 96 S.Ct. 809, 46 L.Ed.2d 580 (1976). In that case, during a broad background description of the enforcement scheme of section 109, the Court noted that "[u]nder § 105, 30 U.S.C. § 815, an operator may apply to the Secretary for review of the factual basis of any order or notice issued under § 104, or for review of the amount of time allowed for abatement of violations." *Id.* at 391. The issue before the court in *NICOA*, however, was whether the Secretary is required to prepare a decision with formal findings of fact before assessing a civil penalty if the mine operator fails to request an administrative hearing. Not before the court was the scope of review under section 105, and we reject the *Double "Q"* court's reading of the above-

---

**3.** The demarcation between notices and orders is evident throughout sections 104–106, 108. *See, e. g.,* 30 U.S.C. §§ 814(b), 814(e), 815(a)(1), 815(d), 816(c)(1). There is wisdom, based on differing degrees of urgency, in granting two procedures.

 

quoted language as controlling on the issue.[4]

We instead are persuaded by the District of Columbia Circuit's cogent and convincing analysis in *UMW v. Andrus,* 581 F.2d 888, *cert. denied sub nom. Carbon Fuel Co. v. Andrus,* 439 U.S. 928, 99 S.Ct. 313, 58 L.Ed.2d 321 (1978), offered in support of its conclusion that an operator served with a violation notice is not entitled to administrative review of the charge on the merits prior to issuance of a withdrawal order. The court's determination was based on the distinction section 105(a)(1) "plainly made between administrative review of withdrawal orders and of violation notices," 581 F.2d at 893, and its reading of the "fortunately unambiguous" legislative history. *Id.* at 892.[5] The court additionally recognized the policy behind denial of immediate review of the merits in notice cases:

> Congress ... in staking out goals for the 1969 Act ... solemnly declared that "[t]he first priority and concern of all in the coal mining industry must be the health and safety of its most precious resource—the miner ...." That priority was reflected in the Act's review provisions, which did not tolerate either temporary relief from notices of violation or, as we now hold, review on the merits of the violation charged while miners continued to work in the affected area. Only when the miners had been removed, or after the violation had been abated and civil-penalty proceedings instituted, did the operator become entitled to challenge the existence of conditions allegedly trespassing upon the Act. That, we think, was Congress' decree, and we must respect it. *Id.* at 894 (footnotes omitted).

We agree with the District of Columbia Circuit's reading of section 105(a)(1) and find that, because no administrative review was available to Fowler and Smith after abatement of the alleged violations, neither was section 106 judicial review of the merits available, and Fowler and Smith are entitled to de novo review of both the violations and penalties in the district court.

*AFFIRMED.*

---

**4.** In dictum elsewhere in *NICOA,* moreover, the court said:

> [t]he Government has suggested that trial de novo is available on the factual basis of the violation as well as on the amount of penalty. The statutory scheme is less than clear on this matter.
> 423 U.S. at 393 n.3, 96 S.Ct. at 812 n.3.

It is interesting to note at this juncture that the government in *NICOA* advocated the very interpretation now advanced by Fowler and Smith. *See also* 43 C.F.R. § 4.530(d) (in effect from August 1971 to April 1978).

**5.** Because we have found the language of the statute to be clear and to permit only one interpretation, we have not resorted to use of legislative history in our analysis.